1068

SARAH A. W. COURSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71755.   Promulgated February 11, 1936.

*Arthur W. Machen, Jr., Esq.,* and *H. Vernon Eney, Esq.,* for the petitioner.

*Paul A. Sebastian, Esq.,* and *W. Frank Gibbs, Esq.,* for the respondent.

OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $3,947.33 in the petitioner's income tax for 1930, and a 25 percent penalty of $986.83 for failure to file a return.   In the notice of deficiency, he included in petitioner's income one half of the gain derived by a trust from the sale of real property.   The petitioner assails this determination primarily as improperly taxing her upon the gain of the trust; and, in the alternative, upon several subsidiary grounds.   By amended answer, the respondent affirmatively claims an increase in the deficiency and penalty, averring that by reason of petitioner's right to make a testamentary disposition of the trust corpus, she is taxable upon the entire income of the trust.   The facts are stipulated.

Before August 3, 1918, petitioner had, since 1909, been the owner of a tract in Maryland containing 37.229 acres, the value of which, on March 1, 1913, was $27,921.75, and on August 3, 1918, was $74,458. On August 3, 1918, petitioner and her husband conveyed this tract, together with others, to trustees by a trust instrument, a copy of which

is stipulated. The trustees were "to collect the rents and income from said property and from any other investments thereof and to pay therefrom all taxes, assessments of every kind, insurance premiums and interest upon the mortgage debts thereon", and all expenses of administration, including a commission of 5 percent of rents and income as trustees' compensation; and to pay the remaining net income to the petitioner for and during her life. The trustees were empowered to manage and control the property and "in their discretion to sell, mortgage, lease, or otherwise dispose of the same, either for the purpose of changing the investments of said trust estate or for the purpose of paying off any of said mortgages or for the purpose of raising the amount of any sums of principal to be paid to said settlor under the power hereinafter reserved to her to withdraw the same."

* * * if at any time the net income from said trust estate and property should not suffice for the needs and requirements of said Sarah Agnes Watson Coursey (and of what constitutes her needs and requirements she alone shall be judge), then in trust to pay over to the said Sarah Agnes Watson Coursey out of the principal or corpus of said trust estate such additional sum or sums of money as, in her judgment, when added to said net income will make an amount sufficient to meet her needs and requirements; the receipts of the said Sarah Agnes Watson Coursey to be a full acquittance and discharge to said trustees for such payments; provided, however, that the amounts of principal which may be so withdrawn by the said Sarah Agnes Watson Coursey shall not exceed in the aggregate one-half of the net value of the principal or corpus of said entire trust estate; and for the purpose of raising the amounts so to be paid said trustees are authorized as aforesaid to make sale of any part of the property held in trust hereunder; and it is further understood and agreed that said trustees shall not be required to raise by mortgage any amounts of principal to be so paid over to the said Sarah Agnes Watson Coursey, and that upon the sale of any part of the property held in trust hereunder, not more than one-half of the proceeds of each sale may be withdrawn by her under the power hereby reserved.

AND IN FURTHER TRUST upon the death of the said Sarah Agnes Watson Coursey to hold the entire trust estate and property then constituting said trust estate (including both the principal then held in trust hereunder and any income not withdrawn or paid over to the said Sarah Agnes Watson Coursey at the time of her death) for such uses and purposes and persons as the said Sarah Agnes Watson Coursey may by her last Will and Testament or any codicil thereto have limited, directed or appointed, the said Sarah Agnes Watson Coursey hereby reserving to herself full and absolute power to dispose of, at her death, by Will the property composing said trust estate, to or for the use of such persons or beneficiaries and in such manner as she may by her Will or codicil direct, limit or appoint; and in default of such disposition by will of said trust estate and property, or in so far as any attempted disposition hereof by Will on the part of the said Sarah Agnes Watson Coursey may not be valid or take effect, said trustees shall hold said trust estate and property in trust to distribute and pay over the same to and among such person or persons as according to the then existing laws of Maryland, regulating the dis-

tribution of personal property of intestates, would be the persons who would take by distribution personal property of which the said Sarah Agnes Watson Coursey had died possessed and intestate, and in the proportions fixed by said laws.

During 1930 the trustees sold the said 37.229 acres for $125,000, realizing, after expenses incident to the sale, $111,397.75 net.

Section 166, Revenue Act of 1928, provides:

Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then, the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

In our opinion, section 166 covers the present case, and the petitioner, the grantor of the trust, had the power during the taxable year 1930 to revest in herself title to one half of the corpus of the trust. As provided by section 166, the income of one half of the trust for 1930 is properly to be included in computing her net income.

The petitioner argues that since the corpus of the trust consisted of land, which she was not permitted to revest in herself, the section is inapplicable. This is a strained construction of the statute which can not reasonably be adopted. Although the petitioner, as settlor of the trust, had no power to require a conveyance to her which would revest in her the title to the land, she did have power, by her own request for one half the value of the corpus, to require a sale of sufficient land to permit a distribution to her of the amount requested. This is plainly within the substantial terms of the section. The words "title" and "part of the corpus" do not imply an identification of specific property which at any given time may comprise the trust estate, and our attention is called to nothing in either the legislative history of the section or its judicial interpretation which would narrow its meaning within such exact limits. See *Charles T. Fisher*, 28 B. T. A. 1164. The petitioner reserved to herself the unrestricted and uncontrolled right, if she deemed it within her needs, to revest in herself an amount equal to one half of the trust corpus. This right was fully recognized in an order and decree of the court of Maryland having jurisdiction over the trust (*Ex Parte In the Matter of Sarah Agnes Watson Coursey*, Circuit Court No. 2, Baltimore City), which order and decree is in evidence. The state court held:

* * * that the true meaning and intent of the above quoted provision of the deed of trust herein is that Sarah Agnes Watson Coursey shall have an absolute right at any time and for any purpose to withdraw from the corpus or principal of the said trust estate such amounts as she may desire, provided only that the aggregate sum of all amounts so withdrawn by her do not exceed one-half of the net value of the principal or corpus of said trust estate, and the

said trustees are under no duty or obligation to see to the application of said sums so withdrawn by the said Sarah Agnes Watson Coursey or to control or restrict in any manner the disposition thereof by her; that in determining the total amount which may be withdrawn from principal or corpus by the said Sarah Agnes Watson Coursey at any one time, the trustees shall proceed as follows, that is to say: The trustees shall appraise the trust estate in their hands at the fair market value thereof at the time application is made for a withdrawal from corpus by the said Sarah Agnes Watson Coursey; to this appraised value shall be added the aggregate amount of all sums theretofore withdrawn from corpus by the said Sarah Agnes Watson Coursey, and the excess, if any, of one-half of the figure obtained by such addition over the aggregate of the sums theretofore withdrawn, shall be the maximum amount, if any, which the said Sarah Agnes Watson Coursey may at that time withdraw from the corpus or principal of the trust estate.

This we take as the controlling construction of the trust instrument and the petitioner's rights thereunder, *Freuler* v. *Helvering*, 291 U. S. 35. The respondent correctly held that section 166 was applicable, and it is unnecessary to consider the petitioner's argument as to whether other sections of the statute, i. e., sections 167, 162 (b), and 162 (c), would also serve to support the determination.

The respondent now claims, however, that his determination was inadequate in including only one half of the profit in the settlor's income, and that the entire profit should have been included. The present contention is that the settlor's reserved power of appointment by will gave her in effect full dominion over the trust corpus, and that there were no adverse interests. This view, we think, can not be sustained. The settlor did reserve the power of testamentary disposition, but such power had not been exercised. Until it is exercised, there is a present interest in those who would under Maryland law take by intestate succession, *Mercantile Trust Co.* v. *Bergdorf & Goodman Co.*, 167 Md. 158; 173 Atl. 31. This adverse interest is enough to preclude the settlor from revesting in herself the entire corpus. Cf. *William B. Armstrong*, 32 B. T. A. 1261.

The petitioner contends that her power to take up to one half the estate is conditioned upon her needs, and that, since she withdrew only $6,000, this must be regarded as the largest amount suited to her needs, and that it may not be said that she could by her own unquestioned demand secure the larger amount, representing one half of the total profit of the sale. No such limit upon her power is suggested in the decree of the state court, and we are unable to read such a limitation in the trust instrument. To say that in the light of past events it may not reasonably be supposed that petitioner would exercise the power to this extent is beside the point. If such power may be exercised without hindrance, the case falls within section 166, irrespective of the petitioner's self restraint. It is the existence of the power of revesting which controls, and not the extent of its voluntary exercise. *Freuler* v. *Helvering, supra.*

The respondent, in applying section 166 so as to tax the settlor upon one half the income of the trust, has computed this one half by treating as the whole profit the difference between the net amount received by the trust ($111,397.75), and the stipulated value of the property on March 1, 1913, ($27,921.75), or $83,476. The petitioner assails the use of the March 1, 1913, value as the base for the computation of her share of the gain, and contends that the correct basis of such computation is the value of the property ($74,458) on August 3, 1918, the date when the property was transferred in trust, and that the whole profit is thus to be taken as $36,939.75, of which the one half attributed to the settlor is $18,469.88.[1] The respondent's use of the March 1, 1913, value is based upon a misconception of the statute. It is only by virtue of section 166 that any part of the profit is to be attributed to the settlor, and this section expressly recognizes that the profit is in fact the profit of the trust, but, to prevent evasion, is included within the income of the grantor. Plainly the method adopted by the statute does not proceed upon a disregard of the trust, but, recognizing the trust as a taxpayer and adopting the computation of its income as a postulate, the statute then provides that the income shall, to the prescribed extent, be included in that of the grantor, *Freuler* v. *Helvering, supra; Dorothy Forbes*, 32 B. T. A. 139; 82 Fed. (2d) 204. This is comparable to the tax upon partnership income which is imposed upon the partners, *Helvering* v. *Walbridge*, 70 Fed. (2d) 683; *Edward B. Archbald*, 27 B. T. A. 837; affd., 70 Fed. (2d) 720; certiorari denied, 293 U. S. 594, and the Commissioner's argument that so much of the accretion as occurred prior to the transfer in trust thus escapes tax has no greater force than it had in those cases as to the accretion prior to the partners' transfer to the partnership. Indeed, the fact that a trust is a taxable person, while a partnership is not taxed as an entity, would seem to make the trust case weaker for the Commissioner's view than the partnership case.

Since the profit which is taxed to the grantor is first computed as the profit of the trust, and since the property was transferred in trust prior to December 31, 1920, section 113 (a) (4) expressly provides that "the basis shall be the fair market value of such property at the time of such acquisition." This is in contrast with the preceding section 113 (a) (3), providing that property acquired by the trust after December 31, 1920, shall take the grantor's basis.

In 1919 the petitioner withdrew $1,738.11 from the corpus of the trust. She contends that in computing her revestable part under section 166, this $1,738.11 must be subtracted from the 1930 value of

---

[1] In the complementary proceeding of *Colonial Trust Co. et al., Trustees Under Deed From Sarah A. W. Coursey*, Docket No. 71756, decided herewith, the Commissioner used the value of $74,450 on August 3, 1918, as the basis for determining the profit of the trust.

the corpus, her withdrawable percentage thus becoming 49.2 percent, which must be applied to the trust income. This is unsound. Her withdrawable share, as determined by the state court, was in 1930 one half the then value of the trust property, such half to be diminished by prior withdrawals. From the stipulation it appears that the value of trust assets on January 1, 1930, was $127,069.37, and therefore the $18,469.88 which should be taxed to her is well within her revestable share.

The petitioner seeks to reduce the trust profit, and proportionately her allocable share, by $16,600 withdrawn from the trust and paid by her in 1932. It comprised $15,000 paid to her husband in compromise of a suit brought by him for a divorce and for the enforcement of an alleged (but denied) agreement by petitioner to pay him $25,000 to dismiss, as he apparently did, an earlier suit filed in 1928 against the trustees and petitioner to set aside the trust deed as in fraud of his marital rights; and "$1,600 legal fees in defense of the suit." These amounts were not paid by the trust but personally by petitioner, albeit with money withdrawn by her from the trust. They were paid in satisfaction of a personal controversy, some part of which dealt with an unsubstantiated charge that the trust had been obtained by fraud and imposition. Cf. *Sanderson* v. *Burnet*, 63 Fed. (2d) 268. They had no effect upon the determination of the income of the trust or the part thereof properly to be included in petitioner's income.

We hold that the deficiency should be redetermined by including in petitioner's income $18,469.88, or one half of the trust profit.

The delinquency penalty of 25 percent follows the failure of petitioner to file a return, and must be added. Revenue Act of 1928, sec. 291; *Douglas L. Edmonds, Administrator*, 31 B. T. A. 962 (on review, C. C. A., 9th Cir.); *Harry D. Kremer*, 31 B. T. A. 566; *Fashion Center Building Co.*, 31 B. T. A. 167.

*Judgment will be entered under Rule 50.*