*Decision will be entered under Rule 50.*

HENRY A. B. DUNNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92629. Promulgated May 10, 1940.

*Vernon Cook, Esq.,* for the petitioner.
*R. P. Hertzog, Esq.,* for the respondent.

## OPINION.

LEECH: The five trusts in this proceeding were before us in *Henry A. B. Dunning*, 36 B. T. A. 1222, upon a deficiency proposed for the year 1933 under the Revenue Act of 1932. We there held that none of the trust income was taxable to petitioner under section 166 of the 1932 Act, but that such portion of that income as was used to pay premiums on petitioner's life insurance was taxable to him under section 167 (a) (3) of the 1932 Act. Petitioner concedes that the latter point is *res adjudicata* as to this proceeding, and that he is properly taxable with respect to such portion of the 1934 income as was used to pay premiums on policies of insurance on his life.

Respondent argues that our decision in 36 B. T. A. 1222, *supra*, was made under the Revenue Act of 1932 and that the change in section 166 by the Revenue Act of 1934 renders all the income of these trusts taxable to the petitioner under that section as thus amended. That change consisted in striking out the words "during the taxable year." He advances no other ground for taxing the income of these trusts to petitioner.

The income which the respondent seeks to tax as that of the taxpayer is that of trusts which must be assumed here to be juristic entities, for tax purposes, which the taxpayer did not and could not receive at any time.

The controlling enactment reads:

SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor * * *.

The trust instruments may be susceptible of two constructions. The first is that the grantor thus created irrevocable trusts for terms of five years each. The second alternative is that the grantor taxpayer in the quoted trust deeds created trusts for terms longer than five years each.

Upon either such premise of fact, the respondent is, we think, foreclosed by decisions of the courts and the Board.

If it be found that the first alternative premise existed, then we have no more than irrevocable five-year term trusts, with a reversion, in the grantor, in each. The Supreme Court, in *Helvering* v. *Wood*, 309 U. S. 344, refused to apply the quoted enactment in such cases.

On the other hand, if the second alternative condition of fact is found to obtain, then, since the power in the grantor to revest the *corpora* of these trusts could not be exercised unless and until the grantor lived for five years, that power did not exist during that period, which included the taxable year. That is to say, it can not, therefore, be said that "at any time the power to revest in the grantor title to any part of the * * * [*corpora*] of the * * * [trusts] is vested—(1) in the grantor." This conclusion, it seems to us, is inescapable in view of the decision of the Sixth Circuit Court of Appeals in *Corning* v. *Commissioner*, 104 Fed. (2d) 329, wherein that court said:

* * * The first question that confronts us, therefore, is whether under the phrasing of § 166 the petitioner as grantor reserved to himself a vested power over the title of any part of the corpus of the trust. The respondent by Article 166–1, Regulation 86, undertook to interpret the section as providing for the taxation of income of a trust to the grantor if there was a power to revoke upon the lapse of a period of years or upon the happening of a specified event, regardless of whether such time be fixed, determinable, or certain to come. The petitioner contends that § 166 does not apply, and since not ambiguous may not be made to apply by regulation, because his right of revocation is subject to a contingency which has not yet happened and the happening of which is beyond his power to control. The Board sustained the Commissioner's interpretation of the statute and the validity of his regulation. It draws a distinction between the existence of a power to revoke and the right to exercise that power. Even though the right to exercise the power to revoke may be contingent, it says, nevertheless the existence of the power during the tax year is not contingent.

The distinction is difficult to apprehend. It is not consonant with generally accepted concepts of powers, for a power which is not presently exercisable and may never be capable of being exercised does not exist. 1, Sugden on Powers, 3d Amer. Ed. 371, 372. It is difficult, therefore, to comprehend that one may be vested with a power that is not presently nor with certainty exercisable *in futuro*.

### [The 1928 Act]

The immediate precursor of § 166 was the similarly numbered section of the act of 1928. That section provided for the taxing of trust income, to the grantor "where the grantor of a trust has at any time during the taxable year . . .

the power to revest in himself title to any part of the corpus of the trust . . ." This opened the door, if indeed it did not invite, the so-called "year-and-a-day" trusts, sustained in decisions such as *Lewis* v. *White,* 56 Fed. (2d) 390 (D. C. Mass.), and *Langley* v. *Commissioner,* 61 Fed. (2d) 796 (C. C. A. 2). In the 1934 Act the words "during the taxable year" were eliminated. From this it is argued that the trust is revocable if the power to revest may be exercised by the grantor "at any time". It does not follow from this, however, that the Congress in the 1934 Act used either the term "power" or the term "vested" in a sense other than these terms were used in the 1928 or preceding Revenue Acts, and the committee reports of the Congress do not so indicate. The term "power" as used in corresponding sections of earlier acts has not been thought to extend to the reservation of a right conditioned upon a contingency that may never occur. *Commissioner* v. *Stokes,* 79 Fed. (2d) 256 (C. C. A. 3) [35-2 USTC ¶ 9528] ; *Higgins* v. *White,* 93 Fed. (2d) 357 (C. C. A. 1) [37-2 USTC ¶ 9601].

The court there thus reversed the Board and denied the validity of the argument which respondent makes here to the effect that, assuming the existence of the second premise of fact, "the power" was "vested" in the grantor "to revest" the *corpora* of these trusts in himself at any time during the first three consecutive five-year periods—that the exercise, only, of that power was contingent on the survival of the grantor throughout those periods. As the Circuit Court there said:

\* \* \* Subsequent to decision in the present case the Board of Tax Appeals departed from its presently applied view of the existence of a vested power under similar trust provisions in the case of *John E. Rovensky,* 37 B. T. A., 702 [Dec. 10,006], and that of *Sophia P. O. Morton,* 38 B. T. A., No. 58 [CCH Dec. 10,410], and has still more recently expressly reversed itself in the case of *Horace Andrews,* Docket No. 89152, decided October 22, 1938 [CCH Dec. 10,488–B], and in that of *Emery May Holden Norweb,* Docket Nos. 89291, 91798, 91826, decided December 28, 1938 [CCH Dec. 10,554–A].

The Board has consistently followed or approved the rule laid down in that Circuit Court decision, not only in numerous memorandum opinions, but in the following published cases: *Ellsworth B. Buck,* 41 B. T. A. 99; *Emily Trevor,* 40 B. T. A. 1241; and *Raoul Fleisch-mann,* 40 B. T. A. 672. See also *Edna B. Elias,* 41 B. T. A. 1109, promulgated simultaneously with the opinion herein. Nothing that appears in *Helvering* v. *Wood, supra; Helvering* v. *Clifford,* 309 U. S. 331; *Helvering* v. *Hallock,* 309 U. S. 106, or *First National Bank of Chicago* v. *Commissioner,* 110 Fed. (2d) 448, furnishes, we think, a sufficient reason for any present change in attitude toward the rule thus laid down by the Circuit Court in the *Corning* case.

The case of *Estate of A. C. O'Laughlin,* 38 B. T. A. 1120, upon which respondent relies here, does lend support to that position. However, that case was decided by the Board on the authority of its decision in the *Corning* case, *supra,* and before the reversal of that case. The opinion of the Seventh Circuit Court of Appeals, in affirming the *O'Laughlin* case, does so without referring to the appli-

cation of section 166, and decides the case wholly on the application of sections 22 (a) and 167 which, upon an examination of the affirmed decision of the Board, were the primary bases upon which the respondent was there sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

DISNEY dissents.

OPPER, dissenting: While entirely mindful of the intricate and difficult question illustrated by this case, and by *Edna B. Elias*, 41 B. T. A. 1109, decided therewith, I can not avoid the belief that the present decision has grasped the most untenable horn of a three-pronged dilemma.

Granting the existence of a trust revocable by the settlor upon a wholly future contingency—the assumption made here by the Board—there emerge three possible interpretations of the present language of 166. The trust may be treated as irrevocable for purposes of that section, even though fruition of the power to revoke may be near at hand and almost certain to arrive. That is the Board's position. The trust may be treated as revocable, even though the contingency permitting revocation be remote in time as well as in likelihood. Or the section may be regarded as intended to draw a line between those cases, on the one hand, where revocation is a reasonable probability and therefore to be regarded as intentionally retained by the grantor as a means of keeping his hand upon property with which he is reluctant to part definitively;[1] and, on the other, cases where it is in the nature of an afterthought inserted from excessive caution and not with any considerable possibility that its exercise will or could be attained. See *John Edward Rovensky*, 37 B. T. A. 702.

There are obvious difficulties inherent in the choice of any of these alternatives. The second is immediately subject to the *reductio ad absurdum* objection that Congress could not have regarded a power of revocation, exercisable, say, after fifty years or upon the death of a large number of intervening beneficiaries,[2] as such a retention of economic control as to justify a tax upon the grantor. Cf. *Helvering* v. *Clifford*, 309 U. S. 331. The third is objectionable principally on the ground of difficulty of application and of the reluctance of administrative and judicial officers to adopt a principle

[1] See *Corliss* v. *Bowers*, 281 U. S. 376.
[2] Cf. *Genevieve F. Moore*, 39 B. T. A. 808.

requiring the disposition of numerous and complicated cases on the basis of their individual facts.[3]

Yet, the first seems to me to carry the greatest objection of all for the refusal, implicit in the Board's decision, to tax the grantor upon a trust revocable at some time in the future, coupled with the refusal to draw any line between contingencies near and far, likely or unlikely, necessarily carries with it the same result where the trust will become revocable soon, say, in the following year. There, as here on this reasoning, the exercise of the power would be effective only when that time arrived, with the result that section 166 would be inapplicable. Cf. *Mabel A. Ashforth et al., Executors*, 26 B. T. A. 1188, 1192. But the unquestioned intent of the 1934 amendment was to include in section 166 so-called "year and a day trusts" where the power was exercisable in one year but could not become effective until the next.[4] Unless the legislative purpose was to limit this inclusion to trusts revocable in a "year and a day" but not after any longer period, a result bordering on the absurd and not justified by the legislative history,[5] this situation is indistinguishable from that which Congress expressly sought to cover.[6] The present result accordingly seems to me incompatible with

---

[3] Only, however, on the assumption that this has actually been done, can the various decisions of the Board, not consciously intended to be inconsistent, be reconciled. Compare the following, where the conditions of revocation were such that it was not considered significant under 166 or sometimes under 167 : *William E. Boeing*, 37 B. T. A. 178 (death of son, beneficiary, before 30) ; *John Edward Rovensky*, 37 B. T. A. 702, *supra* (death of wife and daughter, beneficiary, before 40) ; *Genevieve F. Moore*, 39 B. T. A. 808, *supra* (death of six children, beneficiaries, before 35) ; with the following where the grantor was taxed : *Charles Kaplan*, 26 B. T. A. 379, *Fanny M. Dravo et al., Executors*, 34 B. T. A. 190, and *Mary Ryerson Frost*, 38 B. T. A. 1402 (death of wife) ; *William Lea Taylor*, 37 B. T. A. 875 (two years after death of mother) ; *Warren H. Corning*, 36 B. T. A. 301 (three years after death of father). And see *John N. Fulham*, 40 B. T. A. 48.

[4] From the Report of the Conference Committee :
"Under the terms of some trusts the power to revoke can not be exercised within the taxable year except upon advance notice delivered to the trustee during the preceding taxable year * * *. The Senate amendments require the income from trusts of this type to be reported by the grantor. The House recedes." [73d Cong., 2d Sess., H. Report 1385, p. 24.]

[5] Senator Murphy, proponent of the amendment, stated on the Senate floor :
"* * * In the Langley trust the grantor reserved the right to revoke on the giving of a notice of a year and a day. Since notice was not given during the taxable year 1927 the court held that the income of the trust for 1928 was not taxable to the grantor, since during 1928 he could not revest title to the corpus of the trust. * * *

"There is no use, when raising surtaxes, to leave the way open, by the creation of these revocable trusts, for the avoidance of the imposition of those surtaxes.

"My amendment, by striking out the words 'during the taxable year', would close this avenue of tax avoidance. * * *." (78 Congressional Record, 6471.)

[6] Of course in the "year and a day trusts" the power was exercisable presently with a necessarily postponed effect.

But so is the power here by its express terms. And see footnote 9D, *infra*.

If the present grantor, having executed the "power to revest", died before it became effective, the estate would naturally never "revest" in him. But neither would it under similar circumstances in the "year and a day" trust.

This trust therefore seems indistinguishable from the year and a day trusts except on the narrow ground of the length of time involved.

the Congressional purpose.[7]

Even if it were justifiable to construe section 166 to include "year and a day trusts" and exclude those postponing the power to revoke for a longer period, this decision is not written upon that hypothesis,[8] but upon the assumption that a power not immediately effective is no power at all.[9] There is no suggestion of an effort to analyze the situation from the standpoint of the passage of time. And, indeed, such an effort would be interesting, since the end of the tax year in question is just over two years prior to the date of possible revocation. It would be difficult to say that such a period or even the five-year term of the original trust is significantly different from the "year and a day" concept. See *DuPont* v. *Commissioner*, 289 U. S. 685. And the legislative history would lend no support to such an attitude toward the present law.[10]

While, therefore, it might be tenable to construe the section as applying to all trusts which are revocable, no matter when,[11] or, as

---

[7] See *Helvering* v. *Wood*, 309 U. S. 344.

"When the 1934 Act was before the House Committee, the Treasury recommended that income from short term trusts and from revocable trusts should be taxable to the creator. The Congress adopted the latter by an appropriate amendment to § 166 ; * * *."

[8] Whether reliance is placed on technical concepts thought to be implicit in the word "vested," as it is in *John Edward Rovensky, supra,* and *Edna B. Elias, supra,* is not clear. But, if so, the opposite result should be reached, for by analogy to the law of real property the grantor's right of revocation here would be "vested," possibly subject to being divested, and not contingent. See Restatement of the Law of Property, pp. 534, 542, 562, 564 ; 1 Simes Law of Future Interests, 104.

[9] Since the decision relies heavily upon *Corning* v. *Commissioner*, 104 Fed. (2d) 329, it may not be amiss to note the following with respect to that case:

A. Its authority has been greatly diminished by the subsequent disapproval of *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39. See *First National Bank of Chicago* v. *Commissioner*, 110 Fed. (2d) 448.

B. Its statement that in the *Rovensky* proceeding, the Board abandoned the views expressed in its *Corning* opinion is not in accord with what was said in the *Rovensky* case. See 37 B. T. A., pp. 704, 705.

C. Its suggestion that "the Congress in the 1934 Act" did not use "the term 'vested' in a sense other than these terms were used in the 1928 or preceding Revenue Acts" is remarkable since the term "vested" does not appear in the corresponding sections of the 1928 or preceding Revenue Acts.

D. Its reference to Sugden on "Powers" is to a section headed "Death of Person to Consent Destroys Power." To say that a power which is impossible of exercise is no power at all is a vastly different thing from saying that one which is merely contingent upon a completely probable future event does not exist. It not only exists, it may generally be exercised in advance of the event, though its effectiveness be delayed. Discussing *Countess of Sutherland* v. *Northmore*, 1 Dick. 56, Sugden says (Vol. 1, 3d Amer. Ed., p. 331) : "This case is an authority that where a power is authorized to be executed on a contingent event it may be executed before the happening of the contingency." And see *Bundy* v. *United States Trust Co.* (Mass.), 153 N. E. 337 ; *Machir* v. *Funk*, 90 Va. 284 ; 18 S. E. 197 ; *Cowman* v. *Classen* (Md.), 144 A. 367.

[10] Compare footnote 5, *supra,* with Senate Finance Committee Report, relating to the 1924 Act (68th Cong., 1st sess., S. Rept. 398, p. 25).

[11] The justification for such a position, of course, would be that that is what a literal interpretation of the section requires. Cf. *Charles Kaplan*, 26 B. T. A. 379, *supra; Mary Ryerson Frost*, 38 B. T. A. 1402, *supra.*

I believe better still, to give the Board and the courts a latitude to distinguish between real and unreal powers [12] of revocation, I feel that the one thing we may not do is to conclude that section 166 applies only to trusts which are presently and unconditionally revocable.[13] I regard the Board's decision as necessarily taking that view and am, accordingly, forced to note my dissent.

MURDOCK, BLACK, TURNER, and KERN agree with this dissent.

---

[12] If it be assumed that Congress used the term "power" as a word of art, there would be authority for such a view in the principle that a power conditioned upon an impossible contingency, or one that is not "liable to happen" has no "legal existence." *Moores* v. *Moores*, 41 N. J. L. 440. See 49 C. J. 1296. And see footnote 9D, *supra.*

[13] This is arrestingly illustrated by a comparison with the prior opinion involving this same trust. The ground there relied on for dismissing section 166 has been removed in the meantime by the 1934 amendment. Yet the Board reaches the same result. In the earlier case, 36 B. T. A. 1228, the opinion states:

"It is clear that section 166 of the Revenue Act of 1932 is not applicable in determining the issues, for the grantor could not at any time *during the taxable year* revest in himself title * * *." [Italics added.]