## EDNA B. ELIAS, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90827. Promulgated May 10, 1940.

*Edgar B. Bronson, Esq.,* for the petitioner.
*Benjamin M. Brodsky, Esq.,* for the respondent.

---

1110

1112

**1114**

OPINION.

HILL: Respondent included in petitioner's taxable income both the ordinary net income and the capital net gains derived in the taxable years 1934 and 1935 by each of the four trusts established by petitioner in 1929 for the benefit of her children. Respondent contends that his action is in accordance with the provisions of sections 166 and 167 of the Revenue Act of 1934.[1]

If we are to sustain respondent in taxing the income of the trusts to petitioner, obviously our approval must rest on one of two grounds, namely, (1) because the income of the trusts, by the facts appearing in the record, is brought within the purview of section 166 or section 167, *supra*; or (2) because petitioner retained such dominion and control over the corpus that she did not by creation of the trusts cease to be the owner thereof, and the income therefore, must be regarded for tax purposes as her income within the meaning of section 22 (a), which defines gross income as including "gains or profits and income derived from any source whatever." *Helvering v. Clifford*, 309 U. S. 331. Cf. *Graham Sumner*, 40 B. T. A. 811.

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

> (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or
> (2)  *  *  *

then the income of such part of the trust shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

> (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor ; or
> (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor ; or
> (3)  *  *  *

then such part of the income of the trust shall be included in computing the net income of the grantor.

If either section 166 or section 22 (a) is applicable with respect to the ordinary income, it would be taxable to petitioner. If neither section is so applicable, the ordinary income is not taxable to petitioner, but we would still have to consider whether she is taxable on the capital gains under section 167 or section 22 (a).

A brief consideration of the facts will make it clearly apparent, we think, that the ordinary income here in controversy can not be taxed to petitioner under the doctrine of the cited cases and similar decisions. In the *Clifford* case, the grantor *declared himself trustee* of certain securities, for a term of five years, to hold the net income for the benefit of his wife. On termination of the trust, the corpus was to revert to the grantor, while all accrued or undistributed income was to be treated as property of the wife. The grantor retained very broad powers respecting the management of the trust property, including the right to accumulate income or pay it over to his wife within his discretion; to sell, exchange, mortgage, or pledge any of the securities, whether as corpus or investment or proceeds, and any income therefrom; and exercise all voting powers incident to the trusteed shares of stock. The Court said:

> In this case we can not conclude as a matter of law that respondent [grantor] ceased to be the owner of the corpus after the trust was created. Rather, the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of § 22 (a).
>
> So far as dominion and control were concerned it seems clear that the trust did not effect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created, as before.

In the case at bar petitioner retained no powers of control over the corpus of her trusts comparable to those retained by the grantor in the *Clifford* case. On the contrary, petitioner *appointed her husband*, not herself, *to act as trustee* and vested in him all powers of management, including the power to accumulate or expend income for the benefit of the children. And it may be noted in this connection that the husband clearly had a substantial adverse interest in the disposition of both corpus and income. Each trust provided that when the beneficiary reached the age of 21 the accumulated or unexpended income of the trust fund was to be paid over to him, and thereafter he was to receive annually the net income until the death of either the beneficiary or the grantor, at which time the trust would be terminated and the corpus paid over to petitioner's husband, the trustee. In the event the husband predeceased both the beneficiary and petitioner, the trust was to continue until the death of the beneficiary, when it was to terminate and the corpus revert to petitioner, if she survived the beneficiary; otherwise the corpus would go in remainder to others named in the trust instrument.

Thus, it seems plain that petitioner retained no power of control over any part of the corpus of either trust during the period ending January 15, 1936, nor did she retain any like power exercisable thereafter unless the retention of such a power may be said to have been effected by reservation of the right to modify, alter or revoke the trusts at any time after January 15, 1936, upon the giving of 30 days previous notice in writing to the trustee.

Section 166 provides for taxing the income of a trust to the grantor where "at any time" the power to revest in the grantor title to any part of the corpus *is vested* in the grantor. The application of the statute depends wholly upon the *vesting* of the described power. The provision that the trust should terminate and the corpus be paid over to petitioner if she survived both her husband and the beneficiary did not constitute a vested power to recall the corpus, and hence does not make applicable section 166. Such result would follow because of a retained reversion and not because of the retention of a vested power to revest the corpus in petitioner. *Helvering* v. *Wood*, 309 U. S. 344, affirming 104 Fed. (2d) 1013, which affirmed 37 B. T. A. 1065. In that case, the Supreme Court pointed out that at least in the law of estates a power to revest or revoke is not synonymous with reversion; that "a reversion is the residue left in the grantor on determination of a particular estate."

The provision in each of the trust instruments involved here reserving to petitioner the right to revoke and thus to recapture the corpus at any time after January 15, 1936, did not constitute the retention of a presently vested power. Such right depended upon the subsequent existence of certain conditions, which were beyond the power of petitioner to control. If either the beneficiary or petitioner had died prior to the date mentioned, the trust would have been thereby terminated and the corpus paid over to petitioner's husband. Hence petitioner's power to revoke the trust was contingent upon its not having terminated by its terms prior to January 15, 1936, and whether the trust would terminate by its terms prior to such date was contingent upon the happening or nonhappening of certain events beyond the control of petitioner. Such power did not exist in the taxable years. Prior to January 15, 1936, the power not only did not exist, but in the taxable years it was not known, and could not then have been known, whether the power would ever come into existence.

The power to direct revestment of a trust corpus, which is dependent upon a contingency that may never happen or that is beyond the power of the grantor to control, is not a presently existing power, or, as the principle may be otherwise stated, there is no presently existing power in the grantor to revest "at any time" where the reservation of the power is conditioned upon a contingency that may never occur. "A

power which is not presently exercisable and may never be capable of being exercised, does not exist." *Corning* v. *Commissioner*, 104 Fed. (2d) 329, reversing 36 B. T. A. 301; *John Edward Rovensky*, 37 B. T. A. 702; *Henry A. B. Dunning*, 41 B. T. A. 1101. See also *Commissioner* v. *Stokes*, 79 Fed. (2d) 256; *Higgins* v. *White*, 93 Fed. (2d) 357. Nor is a possibility of a reverter a "power to revest" within the meaning of section 166, *Phebe Warren McKean Downs*, 36 B. T. A. 1129. As above indicated, there is a plain and material distinction between reversion and a power to revest.

Respondent's action in including in petitioner's income for the taxable years the ordinary income of the trusts in question, consisting of interest and dividends, is disapproved.

A different situation is presented in respect of capital net gains. The trust instruments provided that capital net gains should be accumulated and treated as part of the principal fund of each trust and ultimately go to the one entitled to receive the trust corpus. And such gains were in fact accumulated and paid over to petitioner upon revocation of the trusts in 1936.

We can not agree with petitioner's construction of the trust instruments, which specifically provided that the term "net income" payable to the beneficiaries, as used therein, "does not and shall not include any profits that may be realized upon a sale or exchange of securities or of any other property that the trust fund at any time may be invested in." Other references to this point in the trust instruments included the provision that such "profits and appreciations realized shall be added to and become part of the corpus or principal of the trust, to be invested and reinvested by the Trustee as a part thereof."

Petitioner reserved the right, upon certain conditions heretofore mentioned, to revoke the trust instruments at any time after January 15, 1936, and it was provided that in the event of the exercise of such right "the corpus or principal of the trust fund, together with all accumulations and profits and appreciations", should be paid over by the trustee to her, or to such person or persons as she might designate. The fact that upon the happening of certain specified contingencies the accumulated capital gains, along with the corpus then remaining, would be payable to others, does not prevent the taxation of such gains to petitioner.

The circumstances here disclosed bring the capital gains clearly within the purview of section 167. Paraphrasing the statute, such gains during the taxable years *were* being held or accumulated for possible future distribution to the grantor; and during the taxable years it was known that such accumulated gains might, in the discretion of the grantor, ultimately be distributed to her. They were in fact so distributed. Where a grantor may and does become a beneficiary of

the trust, and may and does utilize the trust to manipulate as he sees fit his receipt of a portion of the income, such income is within section 167. *Preston R. Bassett*, 33 B. T. A. 182, 187; affd., 90 Fed. (2d) 1004. See also *Rollins* v. *Helvering*, 92 Fed. (2d) 390, affirming 34 B. T. A. 319.

Respondent did not err in taxing the capital gains in controversy to petitioner pursuant to section 167, and this conclusion renders it unnecessary for us to consider whether such income is also taxable to petitioner under section 22 (a).

Reviewed by the Board.

*Decision will be entered under Rule 50.*

KERN and OPPER dissent.

———

BLACK, dissenting: I respectfully dissent from the conclusion reached in the majority opinion.

Petitioner, the settlor of the trusts, reserved to herself in each of the trust indentures, "the right to modify, alter, or entirely revoke this instrument at any time after January 15, 1936, as to all or any part of the trust herein created, etc." It seems to me this reserved power in the grantor brings the trusts squarely within the provisions of section 166 of the Revenue Act of 1934, relating to revocable trusts. It may be true, as the majority opinion points out, that subsequent events might happen, such as the settlor's death prior to January 15, 1936, which would completely divest her of the power to revoke these trusts. Such a condition subsequent had not, however, happened during the taxable years here in question.

During the taxable years 1934 and 1935 the settlor of the trusts was living and, in my judgment, was completely vested with a power to revoke the trusts, although such power was not exercisable until after January 15, 1936, and this, I think, brings the trusts within the provisions of section 166, even though such power could not be exercised until then. Such cases as *Corning* v. *Commissioner*, 104 Fed. (2d) 329, and *John Edward Rovensky*, 37 B. T. A. 702, in my judgment, are not in point and do not support the conclusions reached in the majority opinion. In those cases the power to revoke the trusts was not vested in the grantor of the trusts during the taxable year, but was to vest only upon the happening of some future contingency, which might never happen. That fact I think makes the *Corning* case and the *Rovensky* case easily distinguishable from the instant case.

As I have already stated, I think the facts of the instant case bring it squarely within the provisions of section 166 of the Revenue Act of 1934, and, unless that section is unconstitutional when applied to such a situation as we have here, it seems to me that we must give it

effect and tax the income of such trusts to the grantor thereof. Considering the nature of the trusts and that the beneficiaries were, petitioner's four children, and that petitioner retained the unqualified right to revoke the trusts and revest in herself the corpus after the lapse of only a few years, I see nothing to indicate that section 166, when applied to such a situation, is unconstitutional. Cf. *DuPont* v. *Commissioner*, 289 U. S. 685.

MURDOCK, TURNER, and DISNEY agree with this dissent.