**HELVERING, Com'r of Internal Revenue, v. DUNNING.**

**No. 4730.**

Circuit Court of Appeals, Fourth Circuit.

March 10, 1941.

SOPER, Circuit Judge, dissenting.

————◇————

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Petitioner.

George Ross Veazey and Vernon Cook, both of Baltimore, Md., for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a decision of the United States Board of Tax Appeals (hereinafter called the Board) in which it was held that Henry A. B. Dunning (hereinafter called respondent) was not taxable on the income of five trust estates for the year 1934. See Henry A. B. Dunning v. Commissioner, May 10, 1940, 41 B.T.A. 1101.

On May 31, 1932, respondent executed five deeds of trust to the Maryland Trust Company and himself, as trustees, conveying stock in Hynson, Wescott & Dunning, Inc., to beheld in trust for the benefit of his wife and children. Under the terms of the trusts, respondent reserved for himself both the right to vote this stock and the right to buy or sell any securities or other assets making up the trust es-

tates. Each of the trust deeds contained the following additional provisions:

"This deed of trust shall continue in full force and effect *irrevocable in all respects* until January 10, 1937; and, subject to the exceptions hereinafter stated, shall terminate on that date, if Henry A. B. Dunning, by written notice to his co-trustee on or before December 31, 1936, declares that he desires no extension of said date of termination. If no such notice is given the above date of January 10, 1937, shall automatically be extended to January 10, 1942, and thereafter during the life of Henry A. B. Dunning from time to time the date of termination shall be automatically extended for successive periods of five years each if no notice as above specified be given ten days before the end of any current five year period. Upon any termination of the trust the corpus of the estate (but not the accumulated income) shall revert to Henry A. B. Dunning, to be his absolutely.

"The trust shall furthermore continue after January 10, 1937, or after the end of any subsequent five year extension in either of the following events:

"(a) If Henry A. B. Dunning dies before January 10, 1937, or before the end of any five year extension of said date which may become effective, then the trust both as to corpus and accumulated income shall continue from the day of his death upon the terms and for the period hereinafter fully set forth.

"(b) If Henry A. B. Dunning is living on January 10, 1937, and the trust then terminates as to the corpus, or if at the end of any five year extension of said date which may become effective, the trust then terminates as to the corpus, then the trust as to the accumulated income shall nevertheless continue from said date upon the terms and for the period hereinafter fully set forth."

Each deed provided that $10,000 of the yearly income from the corpus should be paid to respondent's wife, Ethel Adams Dunning. The surplus income was, in the discretion of respondent as trustee, to be either accumulated or paid to various named beneficiaries. As indicated in the quoted provisions, if any trust were terminated as to corpus, or if respondent died prior to January 10, 1937, the accumulated income was to continue in trust upon certain stipulated terms. Furthermore, if respondent died before January 10, 1937,

or before the expiration of any succeeding five-year period, regardless of notice of earlier termination by respondent, each trust was to continue both as to corpus and income upon those same terms. These terms were, in brief, that the trust was to continue for twenty-one years after the death of the last survivor of the wife and four named children; that the trust property was thereupon to be divided among the then-living issue of the children of respondent.

In 1934, respondent's wife received $50,000 from the five trusts and expended it as follows:

| | |
|---|---|
| Premiums on policies of life insurance | $30,586.56 |
| Household expenses | 7,310.00 |
| Charities | 2,353.00 |
| Income tax | 4,718.26 |
| For the benefit of her daughter, Catherine Kersten | 3,510.00 |
| For the benefit of her son, H. A. Brown Dunning | 825.00 |
| For the benefit of her son, Charles Alexander Dunning | 750.00 |

The payments for premiums on the life insurance policies were made at respondent's suggestion.

On December 29, 1936, respondent gave the necessary notice for the termination of the trusts on January 10, 1937. Although the trust corpora were returned to respondent, he was given neither the investment which comprised accumulated income, nor any of the trust income for 1934. Nevertheless, the Commissioner of Internal Revenue (hereinafter called petitioner) taxed all of the income for 1934 of the five trusts, including the above amounts received and expended by respondent's wife, to respondent for that year. In the proceedings before the Board, upon respondent's petition for redetermination of the alleged deficiency, respondent conceded that he was taxable under Section 167 of the Revenue Act of 1934, 26 U.S.C. A. Int.Rev.Acts, page 727, on the portion of the 1934 trust-income used to pay premiums on his policies of life insurance. He maintained, however, that he was not taxable under Section 166 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 727, as to the balance of the trust-income. The Board sustained his contentions.

In its opinion, the Board concluded that the trust deeds in question were subject to either of two constructions: (1) That

respondent created irrevocable trusts for terms of five years, or (2) that respondent created trusts for terms longer than five years each. The Board then stated that upon either premise the respondent could not be subjected to the instant tax. Petitioner, however, makes two specific assignments of error: (1) That respondent is taxable under Section 166 of the Revenue Act of 1934 on the trust income here involved because he reserved the right to revoke the trusts; (2) that respondent is also taxable under Section 22 (a) of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Acts, page 669 because he remained in substance the owner of the trust properties.

Section 166 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 727 provides:

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor."

This wording of section 166, which persists in the present Revenue Act, is an outgrowth of a long, drawn-out battle between tax lawyers and Congress. In the Revenue Act of 1924, section 219(g), 26 U.S.C.A. Int.Rev.Acts, p. 31, the predecessor of the now-existing section 166, first saw the light —the grantors of revocable trusts were declared taxable for income arising from such trust estates. The case of Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L. Ed. 916, established the constitutionality of this section; but a radical amendment was required in 1932 in order to combat certain types of tax avoidance that had sprung up outside the orbit of the exact terminology of this section. It was not until the amendment of 1934, though, that this section was given its present form. See Caplin, Protecting a Grantor of a Short-Term Trust against Income Taxation (1940) 18 Tax Mag. 677, 678.

As a result of this flaw-finding by the lawyer and chink-filling by the Congress, section 166 has emerged with the possession of many technical safeguards. Cf. Helvering v. Wood, 1940, 309 U.S. 344, 346, 347, 60 S.Ct. 551, 84 L.Ed. 796. Thus, although the "niceties of the art of conveyancing" were rejected by the Supreme Court in Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 449, 84 L.Ed. 604, 125 A.L.R. 1368, these same niceties must here be recognized under the direct mandate of the legislature. In explaining the distinction drawn in section 166 between a grantor's reversionary interest and his power of revocation, Mr. Justice Douglas stated in Helvering v. Wood, supra, 309 U.S. at page 347, 60 S.Ct. at page 553, 84 L.Ed. 796: "Whether as a matter of policy such nice distinctions should be perpetuated in a tax law by selecting one type of trust but not the other for special treatment is not for us. We have only the responsibility of carrying out the Congressional mandate. And where Congress has drawn a distinction, however nice, it is not proper for us to obliterate it. That seems to us to be the case here." The Supreme Court had distinctly recognized in the earlier decision of Helvering v. Hallock, supra, that the problem therein was "not that of rejecting a settled statutory construction." 309 U.S. at page 122, 60 S.Ct. at page 453, 84 L.Ed. 604, 125 A.L.R. 1368. Here, we *are* dealing with a statutory construction and, as a result, our viewpoint and considerations must at times be technical.

The conclusion of the Board in the instant case is based substantially upon the decision of Corning v. Commissioner, 6 Cir., 1939, 104 F.2d 329. In that case, the power to revoke the trusts was not *vested* in the grantor during the taxable year, but was to vest only upon the happening of some future contingency, which might never happen. As a recent writer has stated in an article on this subject (see Caplin, Protecting a Grantor of a Short-Term Trust, supra, 18 Tax Mag. at p. 679): "The grantor is again immune from taxation where he retains only a contingent power of revocation. The development of the statutes and the holdings of the courts all evidence this conclusion. Before 1932, section 166 and its earlier equivalent, section 219(g), provided that the grantor of a trust was subject to an income tax where he had the power to revest in himself title to any part of the trust corpus. However, the Revenue Act of 1932 declared the grantor taxable when the power to revest was 'vested.' This slight change in terminology

seems indicative of a Congressional policy to tax the grantor when his power to revest is 'vested' and to exempt him from taxation when the power is contingent. And the courts so hold—at least where the contingency is beyond the control of the grantor." Citing Corning v. Commissioner, supra; John Edward Rovensky v. Commissioner, 1938, 37 B.T.A. 702. Also, Percy M. Chandler v. Commissioner, Jan. 24, 1940, 41 B.T.A. 165; Sarah A. W. Coursey v. Commissioner, 1936, 33 B.T.A. 1068.

We believe that this is a correct statement of the law in question and that the Corning case was correctly decided. But cf. Altmaier v. Commissioner, 6 Cir., 1940, 116 F.2d 162, 165; First Nat. Bank v. Commissioner, 7 Cir., 1940, 110 F.2d 448, 450. However, we also believe that the Corning case is both distinguishable from, and inapplicable to, the instant case.

■ Section 166 provides that the grantor shall be taxable for trust income where he is "vested" at any time with a "power to revest" in himself title to any part of the trust corpus. Respondent very definitely was vested with such power. Subject to the requirement of giving "written notice to his co-trustee on or before December 31, 1936," as he did, respondent was possessed of a present, "vested" (if such term must be used) right to terminate the continuation of these trusts. The instant power was not contingent upon the death of the grantor's father, as in the Corning case, nor was it contingent upon the death of one of the beneficiaries, as in Commissioner v. Stokes, 3 Cir., 1935, 79 F.2d 256. See, also, John Edward Rovensky v. Commissioner, 1938, 37 B.T.A. 702; cf. White v. Higgins, 1 Cir., 1940, 116 F.2d 312, 317, 318. The only qualification upon respondent's power of revocation was that if he died after having given the necessary notice of revocation, but before the end of the stipulated five-year period, this power could be defeated. Although we do not choose to base our opinion upon this narrow point, we are of the opinion that, for the purposes of classification, respondent was not possessed of a "contingent" right of revocation; but, rather, he was possessed of a "vested" right which was possibly subject of being divested by the occurrence of subsequent events. See dissenting opinions in Henry A. B. Dunning v. Commissioner, supra, 41 B.T.A. 1101, at page 1108, note 8, and in Edna B. Elias v. Commissioner, May 10, 1940, 41 B.T.A. 1109.

■ Regardless of the interpretation given to the Corning case, we believe that respondent is taxable inasmuch as the instant trusts fall squarely within the provisions of the present terminology of section 166. Under the wording of section 166 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev. Acts, page 543, the grantor was taxable only where he was vested with a power of revocation "during the taxable year." Certainly respondent did not fall within the provisions of the 1932 section, for, as construed by the courts, he could not revoke these trusts "during the taxable year." And the Board so concluded in considering these same trusts upon an alleged deficiency proposed for the year 1933. See Henry A. B. Dunning v. Commissioner, 1937, 36 B.T.A. 1222, 1228. Cf. Franklin Miller Handly v. Commissioner, 1934, 30 B.T.A. 1271, 1274. We are convinced, however, that under the 1934 amendment, whereby a grantor is taxable where he possesses the power of revocation "at any time", a contrary conclusion must be reached for the year 1934 and respondent must, accordingly, be held taxable.

Until the 1934 amendment to section 166, the courts followed the interpretation that a grantor was tax free where he was required, before exercising a reserved power of revocation, to give notice during the calendar year preceding the year that the actual revocation was to take effect. E. g., United States v. Stroop, 6 Cir., 1940, 109 F.2d 891; Lewis v. White, D.C.Mass.,1932, 56 F.2d 390. The grantors of these so-called "year and a day" trusts were regarded as not having the power to revest title in themselves "during the taxable year." Thus, in Langley v. Commissioner, 2 Cir., 1932, 61 F.2d 796, the grantor was not taxed, though he had the power to revoke "at the expiration of twelve months and one day after notice of revocation." See also United States v. First Nat. Bank, 5 Cir., 1934, 74 F.2d 360, Judge Augustus Hand dissented in the Langley case on the ground that the grantor should be taxed where he held during the taxable year the power to revest, regardless of when the actual revesting took place. 61 F.2d at page 799.

It is undoubtedly true that the 1934 amendment, which eliminated from section 166 the words "during the taxable year," was specifically aimed at the tax avoidance found in the use of the "year and a day" trusts. See Report of Conference Commit-

tee, H.Rep. No. 1385, 73d Cong., 2d Sess., p. 24. Senator Murphy, the proponent of the amendment, made plain reference on the Senate floor to the trust in the Langley case, supra, and then stated that an adoption of the proposed amendment "should close this avenue of tax avoidance." See 78 Cong.Record, 6471. Nevertheless, we believe that, though the amendment was chiefly directed at the "year and a day" trusts, the plain import of the statutory words covers the instant situation, for respondent certainly had a power of revocation "at any time." In limiting the scope of the Government's broad powers of taxation, we do not attempt to draw a line at the very outskirts of a large, unchartered area encompassed by a general statutory claim of Congress. The boundaries of the field covered by section 166 must instead be found in the due process clause of the Fifth Amendment.

In Caplin, Protecting a Grantor of a Short-Term Trust, supra, ·18 Tax Mag. at p. 682, the author concludes: "Today the short-term trust is the favorite device used by the tax lawyer for the temporary reallocation of his client's income. Whether the trust be for less than a year, or for ten years, the grantor's reversionary interest is recognized as being beyond the pale of section 166 of the present Revenue Act. * * * Nevertheless, such grantor, like the grantor of any other form of trust, receives no protection where he has retained a power to revest the corpus in himself either prior to, or after, the termination of the stated period. In considering the power to revoke at the close of the term, the control over the corpus credited to the grantor —the basis of taxation in Corliss v. Bowers —might very well be questioned. *A term running for one or two years, subject to a future power of revocation, seems to be sufficiently within the grantor's control for taxation purposes. But where this term extends beyond four or five years, the alleged power or control seems to shrivel away. Taxation based upon such distant future right would appear violative of the Fifth Amendment.*" (Italics ours.)

We share this same concern over the constitutionality of an unlimited application of section 166. See Nichols v. Coolidge, 1927, 274 U.S. 531, 541, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; cf. Hoeper v. Tax Commissioner of Wisconsin, 1931, 284 U.S. 206, 215, 52 S.Ct. 120, 76 L.Ed. 248, 78 A.L.R. 346. The mere reservation of the right to revoke after the expiration of ten or fifteen years might very well fall within the prohibitions of the Fifth Amendment. However, it is our duty to apply our viewpoint of the pertinent rules of law to the facts of instant cases if, as, and when, they arise. In deciding the present case, therefore, we need not grope in the treacherous penumbra separating constitutional from unconstitutional levies.

We believe that, under all the facts of the instant case, the additional taxation sought to be imposed upon respondent does not constitute a violation of the Fifth Amendment. Mr. Justice Holmes stated in Corliss v. Bowers, supra, 281 U.S. at page 378, 50 S.Ct. at page 336, 74 L.Ed. 916, that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." In the instant case, the power to terminate the life of the trust estates after the expiration of a five-year period assumes more impressive importance when viewed against the background of both the circumstances surrounding the creation of the trust and the broad privileges allowed by the trust deed itself. Respondent, as trustee, had reserved broad powers of control over the trust properties—he could vote the stock; he could reinvest or sell the securities. Furthermore, the beneficiaries were members of respondent's immediate family. Taxation based upon such a reserved power of revocation, coupled with these additional forms of control, is not violative of the due process clause.

Respondent, in his brief, maintains that the imposition of the tax in question would be tantamount to a refusal by us to recognize the existence of an estate for a term of years. But such conclusion does not necessarily follow; for although we might loudly salute the existence of such common law estate, we cannot thereby draw the boundaries of the government's broad taxing power. As Mr. Justice Cardozo stated in Burnet v. Wells, 1933, 289 U.S. 670, 678, 53 S.Ct. 761, 764, 77 L.Ed. 1439: "Government in casting about for proper subjects of taxation is not confined by the traditional classification of interests or estates. It may tax, not only ownership, but any right or privilege that is a constituent of ownership. * * * Liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and

important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis."

We are aware that the rationale of many of the decisions on the "year and a day" trusts are opposed to our present interpretation. E. g., United States v. First National Bank, supra, 5 Cir., 74 F.2d at page 362; Langley v. Commissioner, supra, 2 Cir., 61 F.2d at page 798; Lewis v. White, supra, D.C., 56 F.2d at pages 391, 392. Nevertheless, we believe that clear authority for our position is found in Helvering v. Wood, supra, and Du Pont v. Commissioner, 1933, 289 U.S. 685, 688, 689, 53 S.Ct. 766, 77 L.Ed. 1447. Cf. Douglas v. Willcuts, 1935, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. In Helvering v. Wood, the Supreme Court recognized the distinction made in section 166 between a grantor's reversionary interest and his power of revocation. In apparent opposition to the spirit of the earlier decision of Helvering v. Hallock, supra, the decision in the Wood case was based upon fine technicalities. The Court went to great extremes, and split many hairs, to hold that a grantor's *reversionary interest* in a five-year term trust did not come within the terminology of section 166. It would seem to follow that if, after the expiration of the five-year period, Wood had been possessed with a power of revocation, instead of the reversionary interest, he would have been held taxable. Cf. Kraft v. Commissioner, 3 Cir., 1940, 111 F.2d 370.

Our application of section 166 makes it unnecessary to discuss the doctrine of Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. Cf. Commissioner v. Branch, 1 Cir., 1940, 114 F.2d 985; (1941) 27 Va.L.Rev. 551. We also need not discuss the conflict of decisions with respect to petitioner's right to raise section 22(a), supra, for the first time on appeal. Compare Helvering v. Hormel, 8 Cir., 1940, 111 F.2d 1, certiorari granted on October 14, 1940, 61 S.Ct. 35, 85 L.Ed. ——, with Commissioner v. Richter, 3 Cir., 1940, 114 F.2d 452, certiorari granted on November 18, 1940, 61 S.Ct. 172, 85 L.Ed. ——, and Helvering v. Achelis, 2 Cir., 1940, 112 F.2d 929.

For the reasons expressed above, the decision of the Board is reversed.

Reversed.

*On appeal to the Board of Tax Appeals in an earlier case involving income from the same trusts for the year 1933, the Board held, 36 B.T.A. 1222, that the income was not taxable to the grantor on

SOPER, Circuit Judge (dissenting).

Confining the discussion, as does the court, to § 166 of the Revenue Act of 1934, I am of the opinion that the decision of the Board should be sustained.* Congress has no power and doubtless had no intention arbitrarily to add the income of one person to the income of another, and to tax the latter upon the whole; and for the purposes of this case, with § 22(a) left out, husband and wife must be considered separate and unrelated persons. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916, involved a trust in which the tax-payer-grantor "fully reserved the power at any moment to abolish or change the trust at his will", and thereby retained "actual command over the property taxed—the actual benefit for which the tax is paid". Here the income in question for the year 1934 had been irrevocably transferred to the wife, and placed entirely beyond the domination of the taxpayer. If full significance is given to this controlling fact, there is no occasion to indulge in the interesting speculation as to how long the term of a trust, subject to a future power of revocation, must be in order to obtain the protection of the Federal Constitution.

the theory that he had not divested himself of control over the securities transferred to the trusts. The government acquiesced in the decision.