**CITY NAT. BANK & TRUST CO. v. UNITED STATES.**

No. 6931.

Circuit Court of Appeals, Seventh Circuit.

Jan. 8, 1940.

Rehearing Denied Feb. 5, 1940.

Robert V. Jones and Edward H. Stearns, both of Chicago, Ill., for appellant.

S. Dee Hanson, Sp. Asst. to Atty. Gen., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

Plaintiff-appellant brought suit in the District Court to recover $3,076.11 which had been paid by the plaintiff to the United States on account of a deficiency assessment made by the Commissioner of Internal Revenue for income tax liability for the year 1930. The court found that the plaintiff was not entitled to recover and entered judgment for the defendant. From this judgment plaintiff prosecutes its appeal.

The case was submitted to the District Court on the pleadings and a. stipulation of facts together with certain exhibits introduced by the plaintiff.

The plaintiff is the executor of the estate of Lewis E. Bulkeley who, on February 15, 1930, executed three trust agreements, under each of which he conveyed to a named grantee, designated as a trustee, 700 shares of common stock. The trusts are referred to in the stipulation of facts as Trust No. 1, 2 and 3 respectively.

The agreement relating to Trust No. 1 authorized the trustee to make such investments as are prescribed by Illinois statutes for investment of trust funds, but the agreement contained the qualification that "the Trustee shall make any and all investments of the Trust Estate or any portion thereof which the Grantor shall specifically request or direct it to make, and the Trustee shall not be responsible for the validity or value of any such investment so made, or liable for any loss thereon."

The trust was to terminate February 25, 1932, and was irrevocable. During the life of the trust the trustee, in its discretion, might distribute the net income to the grantor or allow it to accumulate. If the grantor should be living at the termination of the two year trust he would get back all of the trust property including accumulated net income. The agreement directed the distribution of the trust property in case the grantor should not be living at the termination of the trust.

The agreement for Trust No. 2 gave the trustee a wider choice of investments than trust No. 1 but contained the provision that the trustee should make any investments requested or directed by the grantor and should be absolved from any responsibility for loss in connection therewith. The life of this trust was limited to approximately one year and was to terminate February 20, 1931. Until termination the net income was to be accumulated by the trustee and added to the trust estate. The second agreement also contained a provision that the trust property was to go back to the grantor if he should be living at the date of the termination of the trust, and made provisions for distribution of the property in case of his death prior to termination of the trust.

The agreement for Trust No. 3 gave the trustee power to make such investments as it should deem wise but contained the qualification that the trustee should make such investments as directed by the grantor and should be without responsibility for loss resulting therefrom. This trust was to terminate March 1, 1933, approximately three years after its creation. The trustee was required to pay $100 per annum to the grantor's wife and $100 per annum to the grantor, the remainder of the net income was to be accumulated and added to the trust estate and at the termination of the trust the grantor was to receive all of the trust property if living.

The agreements are in form trust agreements and purport to create irrevocable trusts. But we are of the opinion that the relationship created between the grantor and the grantee is in substance more of a principal-agent relationship than that of trustor-trustee. The substance of the arrangement is to transfer certain property to the grantee to manage for relatively short periods of time under the supervision and control of the grantor and primarily for the benefit of the grantor, since all the trust property, including accumulated income, would go to the grantor at the termination of the trust. The only net income which would not be paid to the grantor was the sum of $100 per annum to be paid to his wife during the life of trust No. 3, which item is not involved in this litigation.

In view of the provisions for distribution of the trust property and income thereof, and the actual control retained by the grantor over the management of the property, and considering the short life of each of the agreements between the grantor and the grantee, we conclude that the arrangements provided for in the so-called trust agreements were not in any substantial sense trusts and that the income in question was from property beneficially owned and controlled by the grantor and was taxable under Section 22 of the Revenue Act of 1928, 26 U.S.C.A. § 22.

The following language of the Supreme Court in the recent case of Griffiths v. Helvering, 308 U.S. 355, 60 S.Ct. 277, 278, 84 L.Ed. ——, decided December 18, 1939, is especially applicable to the device created by the agreements in the instant case: "We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid.' Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency."

Since we hold that the income in question was not trust income within the meaning of the Revenue Act, it is unnecessary to discuss the applicability of Sections 166 and 167 of the Revenue Act of 1928, 26 U.S.C.A. §§ 166, 167 notes.

The judgment of the District Court is affirmed.