**FIRST NAT. BANK OF CHICAGO v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 7042.**

Circuit Court of Appeals, Seventh Circuit.
March 18, 1940.

Elden McFarland, of Washington, D. C. (E. J. Quinn and J. F. Riordan, both of Chicago, Ill., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Morton K. Rothschild, J. P. Wenchel, and Irving M. Tullar, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS, TREANOR and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

This petition for review of a decision of the Board of Tax Appeals involves income taxes for the years 1932 and 1933. It raises the question whether or not the income of certain trusts created by petitioner's decedent should have been taxed to him under the provisions of sections 22 and 167 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts. The following undisputed facts were found by the Board.

Andrew C. O'Laughlin died December 3, 1936. He, with his brother John and their cousin Charles J. O'Laughlin, owned a little more than fifty per cent of the outstanding common stock of the O'Laughlin Securities Company. They desired to retain their family's control of that company and had advised with counsel as to the accomplishment of their purpose. Pursuant thereto, on December 31, 1931, they executed certain separate declarations of trust similar in their nature. Each transferred to the trust or trusts created by him the stock which he owned in the O'Laughlin Company. The decedent executed six declarations of trust, designated by the name of the beneficiary of each. One of the beneficiaries was the widow of decedent's deceased brother, and others were decedent's own brothers and sisters. Decedent's brother John was named in each instrument as the beneficiary of one-seventh of the corpus and one-seventh of the income. Decedent transferred to the trusts created by himself certain stocks and bonds. A list of these securities was made a part of each trust instrument and the corpus of each was to consist of a one-sixth interest in the stocks and bonds listed. Twenty-three thousand seven hundred and seventy-five shares, representing about forty per cent of the common stock of the company, worth at that time in excess of a million dollars, were included in the stocks transferred.

The decedent was named as trustee in each trust instrument and a bank was named as successor trustee. The bank was consulted at the time the trusts were created, and received executed copies of all the trust instruments, and it assigned trust numbers to each.

Each instrument provided that the trustee should have extremely broad and extensive powers in the management and control of the trust property. His choice of securities for investment was unrestricted, as were the manner and terms of sale. He was authorized to determine what constituted corpus and income, and he was empowered to deal with the trust estate, subject to certain limitations and restrictions, in all respects as though he were the absolute owner thereof. Each trust instrument stated that no enumeration of special powers by any of the provisions of the declaration should be construed to limit any grant of general powers to the trustee conferred by, or reasonably to be implied from, any other of the provisions of the declaration. He could maintain margin accounts with brokers on behalf of the trusts, make joint investment of the trust funds with other funds held by him, deal with the trust property in his individual name without designating himself as trustee or disclosing the fact that he was acting as trustee. He was authorized to lend money to or borrow money for the trust in his individual name, and be held harmless from all liabilities connected therewith, for which purpose he was given a lien on the trust estate superior to all rights of the beneficiaries. He was allowed to deal with himself as he would with a third person.

Each instrument contained a statement that it was to be irrevocable until after the end of the calendar year 1934. The decedent was given the right to revoke each trust instrument after 1934, and upon revocation all property in the trust, including corpus and income, was to be his. The decedent's brother John and his cousin Charles were named advisory trustees, and it was provided that the income of the trusts was to be distributed monthly to the separate beneficiaries unless the advisory trustees jointly instructed the decedent as trustee to accumulate the trust income. On

January 15, 1932, these advisory trustees executed and delivered notices to decedent directing him to accumulate the income of each trust. No income was ever distributed prior to decedent's death.

The decedent kept a separate book showing the trust transactions up to December 31, 1935. Shortly thereafter he became ill, and after that date the trust transactions were entered in decedent's personal records. The records indicate that separate transactions were not made for each separate trust, but each transaction was made for the benefit of all six trusts. The decedent commingled the trust funds with his personal funds during the entire period of his trusteeship. At the time of his death he was indebted to the trust in the sum of $55,115.22. He had loaned for the trusts $49,000 to the Company, and $20,000 to the Consumers Company. He was president of both corporations. The net income of the six trusts during the years here involved was $35,189.44 for the year 1932, and $50,986.40 for 1933.

Following decedent's death, the executor transferred the trust estates to the successor trustee, the First National Bank of Chicago, under an order of the probate court, and that bank is now administering the trusts as successor trustee.

Under these facts the Commissioner, in determining the deficiencies, included the trust income in the income of the decedent. The Board of Tax Appeals held that the income of the trusts should be included in the income of the settlor-trustee because the trusts were lacking in substance and because the settlor-trustee had the substance of enjoyment of the trust property. To sustain the ruling the Commissioner relies on the reason assigned by the Board, and he also urges that under the terms of section 167 of the Revenue Act of 1932, where any part of the income of a trust is held or accumulated for future distribution to the grantor, such part of the income is to be included in computing the net income of the grantor. He contends that in this case the income was in fact accumulated during the taxable years, and under the terms of the trust instrument such income might have been distributed to the grantor after 1934 if he had exercised his power to revoke, and the fact that the grantor did not exercise his power is immaterial. He further says that the fact that the instrument did not compel the grantor to distribute the accumulated income to himself is unimportant.

Petitioner relies upon Corning v. Commissioner, 6 Cir., 104 F.2d 329, in which it was held that income from trusts quite similar to those before us was not taxable to the grantor. That decision, however, relied upon Helvering v. St. Louis Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, which was expressly overruled on January 29, 1940, in Helvering v. Hallock, 60 S.Ct. 444, 84 L.Ed. ——, 125 A.L.R. 1368.

It is further contended by petitioner that under the facts here presented, section 167 does not require the inclusion of the trust income in decedent's net income, because the power to determine whether the income should be accumulated was vested in John, who was the beneficiary of one-seventh interest in each trust, and therefore had a substantial adverse interest in the disposition of the trust income. We think it is unnecessary to determine whether John had a substantial adverse interest in the disposition of this trust, because the income was already accumulated at the request of John and his co-advisory trustee. This being true, we think that section 167 plainly requires that it should be treated as income of the grantor for purposes of taxation. See Kaplan v. Commissioner, 1 Cir., 66 F.2d 401.

Furthermore, it is clear that the income would be taxable to the grantor even though it could not be properly classified under section 167. In Helvering v. Clifford, 60 S.Ct. 554, 557, 84 L.Ed. ——, decided by the Supreme Court, February 26, 1940, the Court in speaking of the specific provision in section 166 said: "We should add that liability under § 22(a) is not foreclosed by reason of the fact that Congress made specific provision in § 166 [26 U.S.C.A. Int.Rev.Acts] for revocable trusts, but failed to adopt the Treasury recommendation in 1934 * * * that similar specific treatment should be accorded income from short term trusts. Such choice, while relevant to the scope of § 166 * * * cannot be said to have subtracted from § 22(a) what was already there."

The same expression of opinion should unquestionably be applied to section 167, and if the facts presented here do not come within the purview of section 167 they are certainly within the purview of section 22(a) under the ruling of the Clifford case,

supra. The Court there held that the grantor, after establishing a short term trust, might still be treated under the statutory scheme as the owner of the corpus of the trust, saying:

"* * * And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned.

"In this case we cannot conclude as a matter of law that respondent ceased to be the owner of the corpus after the trust was created. Rather, the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of § 22(a)."

See also City National Bank v. United States, 7 Cir., 109 F.2d 191, decided by this court January 8, 1940.

The order of the Board is affirmed.