CANDIDO JACUZZI AND INEZ JACUZZI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 856-69. Filed November 20, 1973.

*Jerry T. Light* and *William H. Sutton*, for the petitioners.
*G. Phil Harney*, for the respondent.

WILES, *Judge:*[*] Respondent has determined the following deficiencies in petitioners' income tax:

| Year | Deficiency |
|---|---|
| 1959 | $964,649.14 |
| 1960 | 72,762.55 |

The only issue remaining for our decision is whether petitioner, Candido Jacuzzi, realized taxable income in 1960 when his employer paid to a trust for his benefit certain amounts representing salary earned by him during 1959 and 1960 and interest thereon.

### FINDINGS OF FACT

Some of the fact have been stipulated and are found accordingly.

Petitioners are Candido Jacuzzi (hereinafter referred to as petitioner) and Inez Jacuzzi, husband and wife, who resided in Lafayette, Calif., at the time of the filing of the petition herein. They filed joint Federal income tax returns for the taxable years 1959 and 1960 with the district director of internal revenue in San Francisco, Calif. On June 13, 1960, petitioners filed an amended joint Federal income tax return for the taxable year 1959 with the district director of internal revenue in San Francisco, Calif.

Jacuzzi Universal, S.A. (hereinafter referred to as Universal) is a Mexican corporation and was at all times in issue in this case wholly owned subsidiary of Jacuzzi Brothers, Inc. Its headquarters and manufacturing plant are located in the town of Los Trevino, municipality of Santa Catarina, Nuevo Leon, Mexico.

The board of directors of Universal is elected by the vote of the proxy holder representing Jacuzzi Brothers, Inc. On October 20,

---

[*]Pursuant to a notice of reassignment sent to counsel for the parties, and to which no objections were filed, this case was reassigned by the Chief Judge on Oct. 25, 1972, from Judge Craig S. Atkins to Judge Darrell D. Wiles for disposition.

1958, the members of the board of directors of Universal were: Candido Jacuzzi, president; John B. Jacuzzi, vice president; Ricardo del Castillo G., secretary; Joseph Jacuzzi, treasurer; Frank Jacuzzi, director; Giordano Jacuzzi, director; Donald R. Roescheise, director; and Louis Ansani, examiner (no vote). John B. Jacuzzi and Donald R. Roescheise are the son and son-in-law, respectively, of the petitioner.

The board of directors of Universal held a meeting on October 20, 1958, and adopted a resolution appointing Candido Jacuzzi as general manager to represent Universal in Mexico and abroad, for which services the petitioner would be paid $1,000 per month beginning in November 1958. These payments were to be accumulated in a special Universal account in the name of petitioner. The account would bear interest at the rate of 6 percent per year, which interest would accumulate in the special account. The resolution provided that the amounts accumulated in the account would be paid to petitioner at the age of 65 or prior to that time if for any reason he became unable to work, either temporarily or indefinitely. In the event that petitioner died before the occurrence of either of these events, the aggregate fund was to be paid to his legal heirs. As directed by the board of directors of Universal at their meeting on October 20, 1958, Ricardo del Castillo G. on behalf of Universal and the petitioner entered into an agreement for the employment of the petitioner by Universal.

The minutes of the board meeting of October 20, 1958, stated that this compensation proposal was suggested by Ricardo del Castillo G. He had previously discussed his proposal with John Jacuzzi, who said it would be better to establish a deferred compensation plan for petitioner rather than pay him immediately.

No distributions were made to petitioner from the special account during 1958. During the calendar year 1959, no changes were made in the agreement between Universal and petitioner. Also, no distributions were made to petitioner from this account during the calendar year 1959.

On March 24, 1960, the board of directors of Universal adopted a resolution modifying the employment contract to provide that the accumulated balance in the special account and future monthly payments for services would be placed in trust with a fiduciary credit institution to be selected later by Universal. Universal retained the right to withhold all Mexican taxes relating to the payments. Universal obligated itself to appoint a technical committee of at least three persons to decide by majority vote the investments to be made with the funds in trust and to determine in what instances the beneficiaries may receive the benefits of the trust in advance of the termination of the trust. The committee was to operate without any interference from

Universal or the petitioner. Universal obligated itself to replace any member of the committee who failed to perform his duties. The initial members of the committee were John B. Jacuzzi, Ricardo del Castillo G., and Donald R. Roescheise. On March 24, 1960, an agreement incorporating the modifications to the employment contract was signed by Ricardo del Castillo G. on behalf of Universal and the petitioner. The reason the funds were transferred from the account on the books of Universal to the trust institution was to relieve Universal of its responsibility to handle the funds and thereby provide for their safety. The idea to establish a trust fund was proposed by Ricardo del Castillo G. and John Jacuzzi.

On May 26, 1960, Universal, the petitioner and Financiera General de Monterrey, S.A., a Mexican investment and trust institution, executed a trust agreement naming the petitioner as primary beneficiary and certain members of his family as successive beneficiaries in the event of the petitioner's death before the end of the trust term. The period of the trust was to be 15 years. The trust could terminate sooner if it were impossible to achieve its purpose, if the settlor and the beneficiaries so agreed, or if for legal reasons the trustee could not perform its duties and it was impossible to substitute a new trustee. At the termination of the trust, the total of the entrusted funds was to be distributed to the petitioner if he were alive and if not to the named successive beneficiaries. The agreement also contained provisions regarding the technical committee that would administer the trust. The agreement contained no restrictions on the rights of the beneficiaries to assign their interests.

At the time of the creation of the trust the account payable to the petitioner on the books of Universal totaled $16,463.52, which had been accumulated for the 18 months from November 1958 through April 1960. This sum plus a net interest deposit of $629.73 was transferred to the trust institution by checks drawn on the trust institution and dated June 2, 1960. Thereafter, on July 6, 1960, Universal made a payment to the trustee in satisfaction of its obligations for the months of May and June under the employment agreement in the amount of $1,829.28.

On July 14, 1960, the board of directors of Universal adopted a resolution modifying the October 22, 1958, agreement by increasing the monthly payment for services to $1,420, less Mexican income taxes, retroactive to January 1, 1960. On July 19, 1960, Ricardo del Castillo G. on behalf of Universal and the petitioner signed a modification agreement increasing the monthly gross sum to $1,420 retroactive to January 1, 1960. Universal issued its check dated August 10, 1960, payable to the trust institution in the amount of $1,994.40 for the retroactive deficit from January 1, 1960, to June 30, 1960. On the same date inter-

est in the amount of $341.63 was deposited in the trust. On October 12, 1960, the board of directors of Universal codified these amendments to the employment agreement and trust agreement.

On October 28, 1960, the trust agreement was amended to provide that henceforth the remaining members of the technical committee, rather than Universal, would fill any vacancies occurring on the committee.

Universal deposited in the trust institution for the months of July through December 1960, the net sum of $7,482.24.

The amounts of taxes withheld from the funds deposited to the petitioner's account by Universal were paid to the Mexican Government on a monthly basis. The Mexican Government required that these taxes be withheld and paid to it as final payments.

The petitioner did not report as income in 1959 or 1960 either the amounts recorded on the Universal account or those paid to the trust institution. The respondent in his statutory notice of deficiency determined that the petitioner had failed to report "salary income from Jacuzzi Universal, S.A., Mexico, of $14,924.50 in 1959 and $15,920.00 in 1960" and increased petitioner's taxable income accordingly. The respondent amended his answer to allege alternatively that the amounts credited in 1959 to the Universal account were includable in petitioner's income in 1960 when they were paid to the trust institution. In his original brief respondent abandoned his original determination that petitioner received income in 1959 in the form of credits made to the Universal account payable and contended instead that such amounts were includable in 1960 when paid by Universal to the trust institution.

The petitioner was not available for subpoena by the respondent because he was out of the country at the time of the trial and for some time prior thereto.

OPINION

The issue for our decision is whether the petitioner realized taxable income in 1960 when Universal paid to the trust established for the benefit of petitioner certain amounts representing salary earned by the petitioner during 1959 and 1960 and interest thereon. The respondent contends that the petitioner realized taxable income when funds were placed in trust for the petitioner's benefit because a present, nonforfeitable economic benefit was thereby conferred upon the petitioner.

In support of this position, respondent cites *E. T. Sproull*, 16 T.C. 244 (1951), affd. 194 F. 2d 541 (C.A. 6, 1952), in which an employer, in recognition of the taxpayer having performed services for less than his agreed salary for several years, agreed to pay the

taxpayer $10,500 for his uncompensated services. This amount was paid to a trustee, which would pay part of the amount to the taxpayer 1 year later and the balance including income a year after that. There was no restriction on the taxpayer's right to assign or otherwise dispose of his beneficial interest in the trust. This Court held that an economic benefit had been conferred upon the taxpayer and that he, therefore, received income when the amounts were placed in the trust fund. Our holding was based on findings that these amounts had irrevocably been paid out by the employer for the taxpayer's sole benefit and that nothing further remained to be done by the taxpayer to earn the amounts in issue.

The respondent also relies on *J. H. McEwen*, 6 T.C. 1018 (1946), in which an employer agreed to pay to a trustee certain amounts to be held and invested for the benefit of the taxpayer. Payments from this trust fund were to be made to the taxpayer starting with his 60th birthday. If the taxpayer were to die before receiving the amounts to which he was entitled, the payments were to be made to his widow. If the widow did not survive the taxpayer, the payments would be made to the taxpayer's issue. This Court found that the trust arrangement was established in effect at the taxpayer's request and direction and that the taxpayer's failure to personally receive the amounts there in issue was due to his own volition. We held that the payment of amounts to a trustee for the benefit of petitioner and his family conferred an economic benefit on the taxpayer, who therefore realized income. We based our decision on a statement by the Supreme Court in *Commissioner* v. *Smith*, 324 U.S. 177 (1945), that taxable income includes any economic or financial benefit conferred on an employee as compensation whatever the form or mode by which it is effected.

We conclude that the result in the present case is controlled by our decisions in *Sproull* and *McEwen* and we therefore hold that the petitioner realized taxable income when amounts were placed in trust for the benefit of himself and his family. Universal had irrevocably paid out the amounts in issue for the petitioner's benefit. The services relating to the payments had already been performed by the petitioner when Universal made them. Although the evidence does not directly establish this fact, we must infer from the available evidence that the trust arrangement was established in effect at the taxpayer's request and direction. Ricardo del Castillo G. testified that petitioner's son had suggested that the additional compensation to petitioner be deferred and that it be held in a trust fund. The available evidence prevents us from ascertaining whether petitioner's son had made these suggestions at the request of petitioner. Because petitioner chose not to make himself available as a witness, we must presume that his testimony in this regard would have been unfavorable to his position. *Samuel Pollack*, 47 T.C. 92 (1966), affd. 392 F. 2d 409

(C.A. 5, 1968); *Ben Perlmutter*, 44 T.C. 382 (1965), affd. 373 F. 2d 45 (C.A. 10, 1967); *Wichita Terminal Elevator Co.*, 6 T.C. 1158, (1946), affd. 162 F. 2d 513 (C.A. 10, 1947). Based on this inference and the other evidence surrounding the establishment and operation of the deferred compensation plan in issue, we believe that the petitioner directed the establishment of the trust arrangement. Furthermore, under the terms of the trust agreement, the petitioner could terminate the trust prematurely and thereby receive the trust funds merely by achieving an agreement to that effect with Universal, of which he was president.

The petitioner argues that the present case is distinguishable from *Sproull* because the taxpayer in *Sproull* could control the disposition of the fund if he died before the second payment, whereas in the present case, if the petitioner did not live beyond the 15-year term of the trust, he had no power to control disposition of the fund, which would be distributed to certain named beneficiaries rather than to his estate. We disagree with petitioner. In the present case, as in *McEwen*, the secondary beneficiaries were members of the petitioner's family. The economic benefit conferred on petitioner was not diminished because of the provision in the trust agreement that the trust corpus would go to certain members of petitioner's family rather than to his estate, in the event of petitioner's death before the termination of the trust.

Petitioner cites *Drysdale* v. *Commissioner*, 277 F. 2d 413 (C.A. 6, 1960), in support of his argument that he did not receive income in 1960 when Universal made payments to the trust because he did not have the right to demand payment of any part of the trust account. Under the terms of the amended deferred compensation plan in *Drysdale*, the employer agreed to pay $90,000 to a trustee bank in monthly installments of not less than $1,500, such amounts to be for the benefit of the taxpayer. The bank would hold and invest these funds and would distribute them to the employee at the rate of $1,500 per month when he reached the age of 65 or when he retired or before then. In the event that the taxpayer died before receiving all payments to which he was entitled, the payments were to be made to his wife. If the wife were to die before receiving the payments, then the remaining payments were to be made to her estate. If the taxpayer were to breach any of the conditions of the employment contract, he would forfeit all rights to which he was entitled. The taxpayer would also forfeit his rights if he were to attempt to assign his rights under the contract. The taxpayer was required to make himself available for advisory and consulting services while the payments were being made to the bank.

The Court of Appeals held that the taxpayer did not receive income when the amounts in issue were paid to the trustee. The court

thereby rejected the arguments of the Commissioner that the taxpayer had constructively received income and alternatively that an economic benefit had been conferred on him. Even if we assume that in the present case, as in *Drysdale*, the petitioner did not receive income in accordance with the constructive receipt doctrine, this assumption does not alter our conclusion that the petitioner received income pursuant to the economic benefit or cash equivalence doctrine. Although the court in *Drysdale* also held that the economic benefit doctrine did not provide a basis for requiring the taxpayer to realize income when funds were placed in trust for him, we conclude that the facts in *Drysdale* are clearly distinguishable with regard to this theory. In *Drysdale*, the taxpayer did not have the right to assign his interest in the trust fund. Thus, the taxpayer did not receive a present economic benefit because it was not possible for him to receive the cash equivalent of his interest in the fund by assigning his interest. Furthermore, in *Drysdale*, the trustee could have withheld funds from the taxpayer if he failed to perform consulting work after reaching the age of 65. Thus, the taxpayer had not performed all the services required in order to earn the amounts placed in trust.

*Decision will be entered under Rule 50.*