JOSEPH ANASTASIO, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7134–74. Filed February 16, 1977.

*Stanley Pressment,* for the petitioner.
*Michael A. Zimmerman* and *Richard M. Campbell,* for the respondent.

### OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the year 1970 in the amount of $61,086.39. The sole issue is whether a lottery prize won by a minor, together with income earned thereon, which is made payable under the applicable State law to his parents as custodians, constitutes income in the year the prize is awarded or in the year the money is actually turned over to him by his parents.

All of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner resided in New York, N.Y., at the time the petition herein was filed. His Federal income tax return for

the year 1970 was filed with the Internal Revenue Service Center at Andover, Mass.

In February 1970, petitioner, who was born on September 1, 1950, purchased in his own name a New York State lottery ticket for $1 and won $100,000. Since petitioner was a minor, the State of New York, pursuant to sec. 9553, N.Y. Unconsol. Laws (McKinney 1974), issued a check dated April 13, 1970, in that amount to Carmine and Rafaela Anastasio, who were petitioner's parents.

The $100,000 was used to purchase an interest-bearing note and a savings bond in the names of Carmine and Rafaela Anastasio as custodians for Joseph Anastasio, under the New York Uniform Gifts to Minors Act. The total interest earned by the note and bond in 1970 was $4,581.

At no time during 1970 did petitioner or his parents execute, or have executed on their behalf, any trust indenture for the benefit of petitioner. Petitioner's parents filed a United States Fiduciary Income Tax Return, as custodians for petitioner, for the taxable year ending March 31, 1971. In this return, $104,581 was included in gross income, but was shown as having been distributed to petitioner within 65 days of the close of the taxable year, with the result that the return showed no income tax due. The distribution was made because petitioner's parents, pursuant to New York Estates, Powers and Trusts Law (hereinafter EPTL) sec. 7–4.3(b) (McKinney 1967), determined that the distribution would economically benefit petitioner by enabling him to average his income for tax purposes. Joseph reported the $104,581 on his Federal income tax return for 1971, the first year in which he was considered eligible to average his income under section 1301 et seq.[1]

The basic issue involved herein is whether, as respondent contends, petitioner received sufficient economic and financial benefits in 1970 to cause the lottery prize and the interest thereon to be taxable to him in that year, or whether, as petitioner argues, he was precluded from possessing the attributes of ownership and enjoyment in 1970, to such an

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question. The question of petitioner's right to average in 1971 is not before us and we express no opinion thereon.

extent that he should not be taxed until he received the money in 1971 because the prize was paid to his parents as custodians. For the reasons hereinafter stated, we hold for respondent.

The applicable New York State Lottery for Education Law provided that if the winner of the lottery was a minor and the prize was $5,000 or more, payment would be made *to the minor* by depositing the funds to the credit of an adult member of the minor's family as custodian for the minor. N.Y. Unconsol. Laws. sec. 9553(b) (McKinney 1974). The powers and duties of such a custodian are set forth in part four of article seven of the Estates, Powers and Trusts Law. Under those provisions, the custodian can use the funds, in his complete discretion, "for the support, maintenance, education, and benefit of the minor," EPTL sec. 7–4.3(b); the minor, if he has attained the age of 14 years, can petition the court to order the custodian to expend the funds held by him for his support, maintenance, or education, EPTL sec. 7–4.3(c); and the custodian must pay whatever amount is not expended to the minor upon his reaching 21 years, EPTL sec. 7–4.3(d).

The State of New York issued its check for $100,000 on April 13, 1970, less than 17 months prior to Joseph's 21st birthday. The only limitations on his total enjoyment of the prize money were the powers of his parents as custodians to invest the funds as they saw fit and to distribute the funds to Joseph or to hold them for him during that 17-month period.

In *Stephen W. Pulsifer,* 64 T.C. 245 (1975), winnings from the Irish Sweepstakes were deposited in a bank account for the benefit of a minor until he reached 21 years of age or until application for release of the funds was made on his behalf by his legal representative. We held that the minor was taxable in the year the amounts were deposited for his benefit and not in the year of actual receipt by him. Cf. *Candido Jacuzzi,* 61 T.C. 262 (1973); *E. T. Sproull,* 16 T.C. 244 (1951), affd. per curiam 194 F.2d 541 (6th Cir. 1952). See also Rev. Rul. 67–203, 1967–1 C.B. 105.

Petitioner seeks to distinguish *Pulsifer* on the ground that it was not clear in that case whether the minor's rights were assignable and that in the instant case Joseph could not assign his right to the prize money but could only petition to a court for its release to him or expenditure for his support,

maintenance, or education. Putting aside the fact that the applicable New York law does not specifically prohibit an assignment by Joseph and assuming without deciding for purposes of decision herein that petitioner was so prohibited, we are satisfied, as we were in *Pulsifer* (see 64 T.C. at 247), that petitioner's position is without merit. The mere absence of a right to assign has long been held not to constitute a valid reason for reaching a different result. *United States v. Drescher*, 179 F.2d 863 (2d Cir. 1950); *Renton K. Brodie*, 1 T.C. 275 (1942). Nor were the short-term management powers vested in petitioner's parents sufficient limitations upon his enjoyment of the funds to justify postponement of taxation until their removal. See *City Nat. Bank & Trust Co. v. United States*, 109 F.2d 191 (7th Cir. 1940).

We hold that *Stephen W. Pulsifer, supra,* controls and that petitioner received sufficient benefit to be subject to tax on the prize money in 1970.

*Nannie Carr Harris,* 56 T.C. 1165 (1971), revd. 477 F.2d 812 (4th Cir. 1973), relied upon by petitioner, is distinguishable both on its facts and on its legal theory. Our decision in that case was based upon the doctrine of constructive receipt, a concept that significantly differs from the theory of economic benefit (see *E. T. Sproull,* 16 T.C. at 246–247),[2] although admittedly the decided cases have not always been models of clarity in respect of the distinction. See 2 Mertens, Law of Federal Income Taxation, sec. 10.13 (1974 rev.). Since we rest our decision herein on the economic benefit theory, we have no need to consider whether we will follow the reversal of our decision in *Harris.*

We think that the foregoing rationale in respect of the prize money is equally applicable to the interest earned in 1970. Joseph argues that for tax purposes the lottery award constituted the corpus of a trust and interest earned from the award should be taxed in accordance with the provisions taxing trusts and beneficiaries. Sec. 641 et seq.

In enacting the Model Gifts of Securities to Minors Act, upon which the present New York Uniform Gifts to Minors

---

[2] The cases of *Drysdale v. Commissioner,* 277 F.2d 413 (6th Cir. 1960), revg. 32 T.C. 378 (1959), and *Aaron Watson,* T.C. Memo. 1974–63, also relied upon by petitioner, similarly involved the doctrine of constructive receipt and are, therefore, distinguishable.

Act is based, the legislature "intended to provide a single and inexpensive method for making gifts of securities to minors without the necessity of resorting to trusts and formal guardianships." *In re Bushing's Custodian,* 8 Misc. 2d 755, 167 N.Y.S.2d 132, 134 (Nassau County Surr. Ct. 1957). To effectuate this purpose, custodians under the New York Gifts to Minors Act were given broader powers and subjected to fewer restrictions than were trustees. Compare EPTL secs. 7–4.3 and 7–4.4 with EPTL sec. 11–1.1 et seq.

We see no need to elaborate on the distinctions between the powers of a trustee and those of a custodian under the New York Uniform Gifts to Minors Act. We are satisfied that that Act does no more than create a statutory framework, within the specified area, for the exercise of the powers of a guardian to manage the property of minors. Where income-producing property was held by a parent as a natural guardian for a minor child, we have held that no trust was in existence for tax purposes, and that the income was taxable to the minor child directly. *Prudence Miller Trust,* 7 T.C. 1245 (1946); *James T. Pettus,* 45 B.T.A. 855 (1941).[3] Property held by a parent as custodian under the New York Uniform Gifts to Minors Act should be taxed in the same manner. Cf. *Estate of Chrysler v. Commissioner,* 361 F.2d 508, 511 (2d Cir. 1966), revg. on another issue 44 T.C. 55 (1965).

We hold that petitioner is taxable on the interest earned in 1970.

*Decision will be entered for the respondent.*

---

[3] See also *Dorothy Stuit,* 54 T.C. 580, 582 (1970), affd. 452 F.2d 190 (7th Cir. 1971), where we indicated that a custodian was not a "trustee" in the usual sense of that term; Peirsol, "Gifts to Minors: How Effectively Has the Uniform Act Functioned?", 25th Ann. N.Y.U. Tax Inst. 1099, 1111 (1967); "Uniform Gifts to Minors Act," 103 Trusts and Estates 983, 993 (1964).