*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0179P (6th Cir.)
File Name: 00a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ROY V. THOMAS; ELOISE F. THOMAS,

　　　　*Plaintiffs-Appellants,*

　　　　*v.*

UNITED STATES OF AMERICA,

　　　　*Defendant-Appellee.*



No. 99-3532

———————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 96-00369—Algenon L. Marbley, District Judge.

Argued: April 27, 2000

Decided and Filed: May 26, 2000

Before: KENNEDY, SILER, and BATCHELDER, Circuit
Judges.

———————

**COUNSEL**

**ARGUED:** Arnold O. Zacks, ZACKS LAW GROUP,
Columbus, Ohio, for Appellants. Paula K. Speck, U.S.
DEPARTMENT OF JUSTICE, APPELLATE SECTION
TAX DIVISION, Washington, D.C., for Appellee.
**ON BRIEF:** Arnold O. Zacks, ZACKS LAW GROUP,

Columbus, Ohio, Nathan A. Durst, Columbus, Ohio, for Appellants.    Paula K. Speck, Frank P. Cihlar, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

_____

## OPINION

_____

KENNEDY, Circuit Judge. Plaintiffs[1], Roy V. Thomas and Eloise F. Thomas, appeal the district court's decision to grant summary judgment in favor of the defendant, United States of America, in this tax refund action.  Plaintiffs raise one issue on this appeal:  (1) whether the district court erred in determining that the plaintiffs' lottery income did not fall within the economic benefit doctrine under 26 U.S.C. § 61. We believe that the district court was correct in finding that this doctrine did not apply; thus, we affirm the decision of the district court.

### I.  Facts

On December 11, 1992, plaintiff Roy Thomas purchased ten Ohio Super Lotto tickets at $1 each and selected the Cash Option method of payment.  The following evening, plaintiff won the Super Lotto Jackpot prize pool when the six numbers on one of the plaintiff's tickets were drawn.  The prize pool for a cash option winner was worth $8,890,597.    On December 14, 1992, plaintiff presented his ticket to a lottery employee and received a receipt for a winning 6/6 Super Lotto ticket.

While the Ohio state lottery commission issued a news release on December 14, 1992, declaring plaintiff as the winner of the Super Lotto, it took approximately six weeks to process his claim.  On January 4, 1993, the lottery produced

_____

[1]Eloise Thomas is identified as a plaintiff in this action because she filed a joint tax return with Roy Thomas.

---

lottery winners.  Instead, all of these funds are commingled, either in the Gross Revenue Fund or the Lottery Operating Fund.  Should the commission become financially unable to pay all of the claims made against it, all of the lottery winners would be entitled to the same priority in making their claims on the monies in these funds.  Plaintiffs' award was not placed in an irrevocable fund because it was subject to the claims of other lottery winners. In *Pulsifer*, although the three taxpayers had rights in the same fund, they were each entitled to a fixed sum in that fund that was not subject to the rights of the other taxpayers.  Plaintiffs' rights to the money in the "constructive trust" were subject to the rights of other lottery winners;  therefore,  the  "constructive  trust"  was  not irrevocable.

We do not believe that the plaintiffs have identified a fund in which they obtained an irrevocable right which would entitle them to apply the economic benefit doctrine to their income taxes.  Because the plaintiffs have not shown that they are entitled to a tax refund we believe that the district court was correct in granting summary judgment in favor of the government.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

Section 3770:1-5-10(A) of the Ohio Administrative Code[7] provides

The moneys in the lottery fund shall be appropriated in the following order, and only for the following purposes: (1) repayment into the General Revenue Fund of the amount appropriated for the implementation of the State lottery;[8] (2) payment of prize awards to holders of winning lottery tickets . . . (3) payment of expenses . . . (4) payment into the General Revenue Fund of all net revenues.

Plaintiffs argue that this section establishes that lottery winners have priority over the state's other creditors, thus, the fund is protected from the state's creditors. Although we do not agree with the plaintiffs' contention that the economic benefit doctrine applies even when the fund is subject to the payor's creditors, if the beneficiary is a senior creditor, our resolution of that issue is not necessary because the fund remains subject to the payor's creditors – other lottery winners. Plaintiffs concede that state law does not differentiate among lottery winners in terms of priority to the monies in these funds, but plaintiffs assert that the economic benefit doctrine does not require that a fund be established for the sole benefit of a taxpayer, citing the fund in *Pulsifer* as an example. The *Pulsifer* court applied the doctrine to a fund maintained for the benefit of three minors. 64 T.C. at 246. The "fund" in this case differs significantly from the one considered in *Pulsifer*. Because this fund is a "constructive trust" it is not separated from the "trusts" belonging to other

---

[7] "An Ohio Administrative Code section is a further arm, extension, or explanation of statutory intent implementing a statute passed by the General Assembly. It has the force and effect of a statute itself." *Meyers v. Ohio State Lottery Comm'n*, 517 N.E.2d 1029, 1031 (1986).

[8] This requirement was satisfied six months after the state lottery began operating, thus, the lottery winners have first priority to the funds maintained by the state lottery commission.

a pay ticket with respect to plaintiff's claim. Prior to issuing a warrant to the plaintiff, the claims department sent a pay-list and summary voucher to the Office of Budget Management ["OBM"] for approval. The OBM confirmed that sufficient monies were available in the state lottery fund to pay the claim and transferred the summary to the office of the Auditor to prepare a warrant for the payment of the funds owed to the plaintiff. Plaintiff presented this warrant for payment to the National City Bank on January 28, 1993.

Plaintiffs filed joint income tax returns for 1992 and 1993 using the cash receipts and disbursements method of accounting. They reported the gross winnings on their lottery ticket on their 1993 tax return. On December 27, 1994, they filed an administrative claim for a refund contending that the income should have been reported in 1992. They acknowledged that if their claim was allowed they would be obligated to pay the tax in 1992 and that the taxes and interest due on their 1992 tax liability would be offset against their 1993 tax refund resulting in a total refund of $778,496. The IRS denied their claim. On April 12, 1996, plaintiffs filed this complaint in district court requesting a refund of income taxes paid for the calendar year of 1993. On March 30, 1999, the district court granted the government's motion for summary judgment, denied the plaintiffs' motion for summary judgment, and dismissed the plaintiffs' complaint. Plaintiffs timely appeal.

## II. Discussion

This court reviews a district court's decision to grant summary judgment de novo. *Thomas v. United States of America*, 166 F.3d 825, 828 (6th Cir. 1999). We will affirm the district court's decision if we find that there are no material factual disputes and that the United States is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), and we must view all evidence in the

light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Both parties agree that there are no issues of material fact; therefore, we can resolve this case by determining whether the economic benefit doctrine is applicable. Because the plaintiffs have not proven that they qualify for a tax refund we affirm the judgment of the district court.

Plaintiffs report their income for federal income tax purposes under the cash receipts and disbursements method of accounting. *See* 26 U.S.C. § 446(c)(1). Under this method, they report income in the year of receipt and deduct expenses in the year of payment. *See* 26 U.S.C. § 451 (a). While the plaintiffs did not receive their lottery winnings until 1993, they argue that the winnings constituted income in 1992.[2] Plaintiffs' argument in support of their contention that they are entitled to a refund for income taxes paid in 1993 is based on the economic benefit doctrine. The economic benefit doctrine was developed in response to the use of deferred compensation plans for employees. *See Sproull v. Commissioner*, 16 T.C. 244 (1951), *aff'd per curiam*, 194 F.2d 541 (6th Cir. 1952). It was intended "to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." *Commissioner v. Smith*, 324 U.S 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830 (1945). The doctrine provides for the taxation of financial benefits that are (1) fixed; (2) located in an irrevocable fund; and (3) not subject to the payor's debtors. *See Sproull*, 16 T.C. at 247-48. "It is based on the theory that the promise to pay deferred compensation in the future in and of itself under certain circumstances may constitute an economic benefit or the equivalent of cash to be taxed currently at present value, if it can be valued currently with some exactness." McDonald,

---

[2] In 1993, Congress instituted higher tax rates for taxpayers with income over $250,000.

had not completed the verification process necessary to confirm that the plaintiffs were the winners of the Super Lotto jackpot. This verification process was a condition on the plaintiffs' receipt of the lottery award. Until the state completed this verification process, the plaintiffs were not entitled to the monetary award. Although the plaintiffs are correct in saying that the owner of the winning lottery ticket had an absolute right to the award once the individual filed his claim, the issue before the court is whether the taxpayer had an absolute right to the award. Because the plaintiff taxpayers were not considered to be the owners of the winning lottery ticket until the state completed its verification process they did not have an absolute right to the award in 1992. The plaintiffs received no present financial benefit from the lottery award until 1993; therefore, they are not entitled to a refund based on the economic benefit doctrine.

Plaintiffs' "constructive trust" argument also fails to satisfy the economic benefit doctrine because the award was not secure from the claims of the state's creditors. Unlike traditional cases where courts have applied the economic benefit doctrine, this case does not involve the transfer of funds to a third party and beyond the reach of the payor's creditors. *See, eg., Anastasio v. Commissioner*, 67 T.C. 814, 817 (1977); *Pulsifer*, 64 T.C. at 247; *Sproull,* 16 T.C. at 247-48. Plaintiffs argue that the doctrine does not require a transfer to a third party, but instead, only requires that the payor relinquish control over the funds. The plaintiffs assert that state law governs the use of these monies and restricts the lottery commission's use of these funds. Plaintiffs point to numerous provisions of Ohio law which state that lottery winners' awards should be paid from the State Lottery Gross Revenue Fund and/or the State Lottery Operating Fund. *See* Ohio Rev Code. § 3770.06(A); *see also* Ohio Admin. Code § 3770:1-5-10. These same provisions, however, also provide for the payment of the state's creditors from these funds. While plaintiffs are correct in their assertion that state law restricts the use of these funds, these restrictions are not sufficient to secure the plaintiffs' award from other lottery winners.

Plaintiffs argue that this trust was created in the State Lottery Gross Revenue Fund and then transferred to the State Lottery Operating Fund from which the plaintiffs were paid. It is to this "constructive trust" that the plaintiffs believe this court should apply the elements of the economic benefit doctrine. Even if we accept the plaintiffs' definition of the fund,[6] we do not believe they have shown that the economic benefit doctrine applies. The plaintiffs cannot establish that they had an irrevocable right to this fund or that this fund was not subject to the lottery's creditors.

The "constructive trust" fund fails to satisfy the economic benefit doctrine because the plaintiffs' right to the monies in this fund was contingent as of the end of 1992. Plaintiffs contend that once they filed their claim as the owners of the winning lottery ticket, they had done all that was necessary for them to be entitled to the lottery award; therefore, as of December 14, 1992, they received a present financial benefit from their lottery award. Contingency, however, does not turn simply on the taxpayer's action. Rather, to satisfy this element of the doctrine the plaintiffs must show that their receipt of the award was conditioned only upon the passage of time. *See Stiles v. Commissioner*, 69 T.C. 558, 569 (1978). This, they cannot do. As of the end of 1992, the commission

---

[6] The government contends that the plaintiffs, in their administrative challenge to the IRS's refusal to award them a refund, argued that their winnings were maintained in the State Lottery Gross Revenue Fund which constituted the irrevocable fund to which the doctrine should be applied. Before the district court, the plaintiffs asserted that the fund was the amount of the lottery award generated from the sales of tickets for the Super Lotto drawing of December 12, 1992. The government argues that the plaintiffs waived their right to argue that the Lottery Fund and/or the "prize pool" constitute an irrevocable fund because the plaintiffs did not raise these claims in the administrative proceeding. *See Salyersville Nat'l Bank v. United States*, 613 F.2d 650, 651 (6th Cir. 1980). In response to this variance defense, the plaintiffs state that the government waived its right to assert this defense by its failure to raise it before the district court. *See id.*; *see also Tucker v. Alexander*, 275 U.S. 228, 230-31, 48 S.Ct. 45, 46, 72 L.Ed. 253 (1927). Because we believe the plaintiffs' argument fails regardless of which fund this court attributes the plaintiffs' award we do not think it is necessary to resolve this issue.

*Deferred Compensation: Conceptual Astigmatism*, 24 Tax L. Rev. 201, 204 (1969).

In *Pulsifer v. Commissioner*, 64 T.C. 245 (1975), the tax court extended this doctrine to sweepstakes winnings. In *Pulsifer*, the court held that three minors' winnings from an Irish lottery were taxable in the year in which the funds were deposited with the court. *Id*. at 247. Under Irish law, minors were not entitled to lottery winnings until they reached the age of majority. Pending the minors' majority, these winnings were placed in a fund administered by the court. The taxpayers argued that they should not have to pay taxes on these winnings until they received the winnings at the age of majority. *Id*. at 246. The court disagreed and held that the economic benefit doctrine was applicable. The court stated

> [u]nder the economic-benefit theory, an individual on the cash receipts and disbursements method of accounting is currently taxable on the economic and financial benefit derived from the absolute right to income in the form of a fund which has been irrevocably set aside for him in trust and is beyond the reach of the payor's debtors.

*Id*. The court found that the lottery winnings were held in an irrevocable trust for the benefit of the minors that was not subject to the lottery's creditors. In these circumstances, the court held that it was appropriate to tax the winnings in the year in which the fund was created because the fund conferred an economic benefit on the minors. *Id*. at 247.

In analyzing whether the plaintiffs were entitled to a tax refund based on the economic benefit doctrine, the district court considered whether the plaintiffs had satisfied the three elements of the doctrine: (1) the existence of a fund in which money has been placed; (2) that is irrevocable and beyond the reach of creditors; (3) in which the beneficiary has vested rights to the money, with receipt conditioned only on the passage of time. The district court held that the plaintiffs were not entitled to the application of the economic benefit doctrine because the lottery award did not satisfy any of the

elements of the doctrine. We believe that the district court's analysis was correct.

The primary difficulty with this case is the identification of the fund in which the plaintiffs claim to have an irrevocable right. In their administrative claim, the IRS construed the plaintiffs' claim as contending that they were entitled to apply the economic benefit doctrine to their lottery winnings because the State Lottery Gross Revenue Fund[3] constituted the fund in which they had an irrevocable right to a fixed sum. The Gross Revenue fund is a custodial account, which is under the control of the State Treasurer but not part of the State Treasury, and its assets are not commingled with the assets of the State Treasury. *See* Ohio Rev. Code § 3770.06(A). It is funded by the transfer of monies from lottery sales agents. *See* Ohio Admin. Code § 3770:1-4-04. Plaintiffs stated that once they claimed their prize on December 14, 1992, they had an unconditional entitlement to the fixed sum of $8,980,597 maintained in this fund. Because this fund was a custodial fund and separate from the state's other accounts, plaintiffs argued that it was not subject to the state's general creditors. Plaintiffs contended that this fund satisfies all the elements of the economic benefit doctrine; therefore, they were entitled to a tax refund.

We agree with the IRS that if the plaintiffs' claim is identified as an irrevocable right to money contained in the Gross Revenue fund, it must fail because the plaintiffs' lottery award was not funded by the State Lottery Gross Revenue

---

[3]Lottery awards are funded by a portion of the ticket sales for each week's lottery drawing. The winning ticket number is announced on Saturday evening. The following Tuesday, the revenue generated by ticket sales from the previous week is swept into a Gross Revenue Fund which is separate from the state treasury. From this fund, the commission pays smaller cash lottery prizes and certain lottery expenses, such as credits to banks and commissions to licensed sales agents. The next day, the remaining moneys in the Gross Revenue Fund are transferred to the state treasury. For bookkeeping purposes, the lottery monies are accounted for in three funds: the Lottery Operating Fund, the Deferred Prizes Fund, and the Unclaimed Prizes Fund.

Fund. The commission requires that all lottery awards over $5,000 be paid from warrants issued by the Office of Budget and Management from the state lottery fund in the state's general revenue account.[4] This voucher entitles the owner to payment from the Lottery Operating Fund maintained in the Ohio General Revenue Fund. The Gross Revenue Fund is a distinct bank account separate from the General Revenue Fund bank account. The plaintiffs could not have received payment for their award from the Gross Revenue Fund; therefore, the argument that this fund constitutes the fund in which the plaintiffs' lottery winnings were maintained and in which they received a present economic benefit is not persuasive.[5]

The plaintiffs, however, state that this court should not construe their claim as an entitlement to monies maintained in the Gross Revenue Fund or any other fund defined by the state. Instead, plaintiffs argue that they have an irrevocable right to a fixed sum, the amount of their lottery award, held in a "constructive trust" maintained by the state of Ohio. This trust was funded by the ticket sales for the Super Lotto drawing on December 12, 1992, and the plaintiffs contend that they gained an irrevocable right to the award when they presented the winning ticket on December 14, 1992.

---

[4]The commission pays awards greater than $5,000 by warrant because it is required to deduct withholding taxes for these prizes. *See* 26 U.S.C. § 3402(q).

[5]In addition, this argument fails because this fund was subject to the state's creditors. Although this fund is separate from the state's general account and not subject to the state's general creditors, it is subject to the state's lottery creditors. Ohio law provides that the Gross Revenue Fund should be used to pay not only lottery winners, but also sales agents' bonuses, commissions, and reimbursements. *See* Ohio Rev. Code § 3770.06(A). The agents are state creditors, thus, the fund is not beyond the reach of the payor's creditors. Also, unlike the State Lottery Fund, the Gross Revenue Fund does not set forth a priority order for payments. Any right the plaintiffs had to the monies in the Gross Revenue Fund was subject to the claims of the other creditors, lottery winners and sales agents, and the plaintiffs did not have priority over any of these creditors.